648 So.2d 487 (1994)
Fernanda GUILLEN, Wife of/and Hernan Guillen
v.
TRANSIT MANAGEMENT OF SOUTHEAST LOUISIANA, Regional Transit Authority and John Doe.
No. 94-CA-0947.
Court of Appeal of Louisiana, Fourth Circuit.
December 28, 1994.
Bryan, Jupiter & Lewis, Vincent P. Blanson, Carl A. Butler, Lynne M. Myers, New Orleans, for defendants-appellants.
James Minge & Associates, Dennis P. Couvillion, James Minge, New Orleans, for plaintiffs-appellees.
*488 Before BARRY, ARMSTRONG and PLOTKIN, JJ.
BARRY, Judge.
Transit Management of Southeast Louisiana (TMSEL) and the Regional Transit Authority (RTA) appeal a judgment awarding damages for injuries to a passenger on an RTA bus.
On September 9, 1989, Fernanda Guillen was injured when the rear doors of a bus closed before she cleared the exit. She sued TMSEL, RTA and the bus driver under a negligence theory, and her husband, German Guillen,[1] sued for loss of consortium. The trial court awarded Mrs. Guillen $25,000 for general damages and $2,940.95 for special damages. Mr. Guillen was awarded $5,000 for loss of consortium.
TMSEL and RTA assign as error:
1) concluding that the bus driver negligently released the switch to close the doors;
2) not assessing comparative fault;
3) awarding damages that are excessive.
Mrs. Guillen, who was 55 years old at the time of the injury, testified that she boarded the bus (she thought # 592) at Canal St. at about 6:00 p.m. She was wearing flat shoes and the weather was clear. She attempted to exit the bus at Magazine and Seventh Streets. The rear doors opened automatically and as she stepped down the doors closed on her knees and right hand. The doors remained closed for "maybe two minutes, three minutes." The doors opened and she got off the bus. Mrs. Guillen yelled in pain and a number of people called to the female bus driver, but the bus drove off. Other passengers had exited behind her without a problem. Vivian Ellow, the woman who exited in front of Mrs. Guillen, offered to help. Mrs. Ellow gave Mrs. Guillen her name and phone number. Mrs. Guillen attempted to report the Saturday evening accident to RTA, but no one answered the phone. She went to Dr. Bogran three days after the accident because of the pain in her knees. Heat treatments helped and her last visit was in January, 1990. When the pain returned, Mrs. Guillen saw Dr. Manale from March, 1990 to July, 1991. She again saw him from July to September, 1992.
Mr. Guillen testified that after the injury he had to take over the cooking and cleaning. He had to do the housework. His wife could not stand for long periods of time. She experienced pain in her knees. She could no longer go dancing with him.
Mrs. Ellow, an independent witness, testified that she exited through the back door at Magazine and Seventh Streets. She did not remember the weather or the type of shoes worn by Mrs. Guillen. She was the first person to exit and waited for the doors to open. Once they were open, the doors remained open. After getting off the bus she turned around and saw the doors had closed on Mrs. Guillen. Mrs. Ellow saw one leg caught in the door, then the doors opened and Mrs. Guillen stepped onto the ground. Mrs. Guillen was very upset and had "a little limp." Mrs. Ellow stated that the bus drove away and she gave her name and telephone number to Mrs. Guillen. On cross-examination Mrs. Ellow was questioned about her deposition wherein she stated that the green light was on and she had to push a handle to open the doors. Mrs. Ellow was not sure whether there was a green light or the door opened automatically, but said that she thought she had to wait for the driver to open the door. On redirect Ms. Ellow stated that it "[s]eemed ... like" the doors opened automatically. In her prior deposition she had stated that the doors automatically stayed open for people to exit.
Frank Echols, Superintendent of Arabella Station Operations, testified that he had worked 27 years for the transit system and 10 years for TMSEL which runs RTA. According to the records, # 592 was not on Magazine Street on September 9, 1989. There were six buses on Magazine Street in September, 1989: three were GMC, two were MAN, and one was a Grumman. Between 5:30 and 6:00 p.m. on September 9, 1989 there were two GMC and one MAN bus. Relying on his experience, Mr. Echols *489 testified that in all of the buses the driver was required to release an inner lock for the doors to open. In a Grumman or MAN bus the rear doors were opened and closed by the driver. The driver had to pull "the handle to close the door." On a GMC bus the driver had to release an inner lock and the passenger pushed the handle to open the door. To close the GMC rear doors the driver had "to release the switch...." Mr. Echols said that all of the doors have a sensitive edge. If a door closed on an arm or an umbrella, it would "pop right back open." Mr. Echols noted that one female driver was assigned to the Magazine Street line but she no longer worked for the company. He did not know which bus the female was driving.
No bus driver testified.

FAULT
A common carrier is held to the highest degree of care and the slightest negligence which causes injury to a fare-paying passenger will result in liability. However, a common carrier (such as RTA) is not absolutely liable for the safety of its passengers. It is not the insurer of a passengers' safety. Smith v. Regional Transit Authority, 559 So.2d 995 (La.App. 4th Cir.1990), writ denied, 566 So.2d 986 (La.1990). When there is proof that a fare-paying passenger on a public conveyance was injured and did not reach his/her destination safely, the burden shifts to the carrier to show it is free from negligence and to overcome a prima facie case. McCullough v. Regional Transit Authority, 593 So.2d 731 (La.App. 4th Cir.1992), writ denied, 595 So.2d 655 (La.1992).
Deference is owed to the factfinder, but appellate courts have a constitutional duty to review facts. A reviewing court may not merely decide that it would have decided differently. "Rather, notwithstanding the belief that they might have decided it differently, the court of appeal should affirm the trial court where the latter's judgment is not clearly wrong or manifestly erroneous." Ambrose v. New Orleans Police Ambulance Service, 93-3099 (La. 7/5/94); 639 So.2d 216. The factfinder's allocation of comparative fault is a factual matter and is reviewed under the manifest error/clearly wrong standard. Scamardo v. New Orleans Stevedoring Company, 595 So.2d 1242 (La.App. 4th Cir.1992).
The trial court concluded that Mrs. Guillen was injured on the RTA bus which was driven by a TMSEL driver. The rear doors closed on her legs at the knees and her right hand. The court decided the doors (which remained open until released by the driver) were not defective and "by implication, the doors were closed by action of the bus driver." The court noted that the public carrier owed a high degree of care to its passengers to insure that they were not injured while they enter, exit or ride on a bus and stated: "The driver's negligence relates to his releasing the doors without assuring that all passengers had safely exited." The court assessed no comparative negligence to Mrs. Guillen "because the doors were of the type that had to be released once opened by action of the bus driver."
TMSEL and RTA argue that the court was clearly wrong by finding that operation of the doors resulted in Mrs. Guillen's injuries. They claim that Mr. Echols' testimony about the safety features of the doors proved Mrs. Guillen was not injured because the driver closed the doors on her legs. Although TMSEL and RTA do not dispute that the driver was in control of closing the doors, they claim there was no evidence that the driver operated the doors in a negligent manner.
Mrs. Guillen proved that she was a farepaying passenger on the bus and did not reach her destination safely. Mr. Echols' testimony was that in all buses, regardless of the manufacturer, the driver had to release a switch to close the doors whether they opened automatically or the passenger had to push a handle.
The finding that the driver negligently released the inner lock to close the doors before the passengers had exited is not clearly wrong.
TMSEL and RTA also argue that Mrs. Guillen was comparatively negligent because other passengers exited the bus before and after her without incident. They claim that a *490 passenger has some responsibility for her safety when she exits a bus.
We find no error in the decision not to assess comparative negligence.

QUANTUM
TMSEL and RTA argue that the award of $25,000 for general damages is excessive.
The trial court has great discretion when assessing damages. An appellate court should not disturb an award unless it is an abuse of discretion. Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The court found that Mrs. Guillen sustained the following injuries: ecchymosis of the right knee; crepitus of the right knee; knee strain; right hip strain; right ankle strain; strain of three metacarpal joints (in the right hand); and active chondromalacia of both knees.
The medical records and reports of Dr. Bogran and Dr. Manale were submitted in lieu of their testimony. Mrs. Guillen saw Dr. Bogran on September 12, 1989 when X-rays showed pre-existing "changes of osteoporosis" and spurring. He observed moderate to severe crepitus and ecchymosis (bruise 4X6 cm) of the right knee with edema, the right shin and ankle were tender, the right hand was tender at the second, third and fourth metacarpal joints and the left knee was tender. Mrs. Guillen underwent heat treatments, medications were prescribed, she improved and Dr. Bogran discharged her on January 26, 1990.
When Mrs. Guillen began experiencing pain again, she saw Dr. Manale, orthopedist, on March 7, 1990. Dr. Manale concluded that she sustained injuries to her knees so that symptomatic chondromalacia patellae (softening of the cartilage) was noted. He found "clearly audible patellofemoral crepitus from the knee joints" and advised Mrs. Guillen to wear braces on her knees and to take an anti-inflammatory medication. She saw him monthly at first and then less often. Mrs. Guillen was discharged on July 29, 1991, but returned on July 8, 1992. Dr. Manale again discharged her again on September 16, 1992. Mrs. Guillen was restricted to light work.
The record supports the award. There is no abuse of discretion.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] Although the caption reads Hernan Guillen, counsel amended the petition to correct the spelling of Mr. Guillen's first name to read German. The trial court judgment reflected the change.