11 TERRI F. LOVE, Judge.
Trolley Stop, Inc. appeals the trial court’s judgment, which found the Trolley Stop and its waitress, Dana Maurice, negligent based on injuries Gregory Flint, Sr., sustained as a result of coffee spilling onto his hand, stomach, legs, and groin area. The trial court awarded $15,000 in general damages, $1,502.82 in lost wages, and $544 in lost details to the plaintiff. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

On November 22, 1996, Gregory Flint (“Flint”), a New Orleans police officer, entered the Trolley Stop, Inc.(“Trolley Stop”) to purchase a cup of coffee. A Trolley Stop employee, Dana Maurice, served Flint along with several other police officers. While raising his cup for a refill of coffee, the coffeepot collided with the cup and shattered. Hot coffee spilled onto *638 Flint’s hand, stomach, legs, and groin area. Flint was taken to the emergency room and admitted to the hospital. As a result of his injuries, Flint underwent physical therapy for his hand. Upon Flint’s return to work on December 15, 1996, he was assigned to work desk duty Lfor several months. Flint’s hand was discolored immediately after the incident and remains slightly discolored where the coffee spilled onto his hand, stomach, legs and groin area.
The defendant filed suit against the Trolley Stop and its insurer, Essex Insurance Company (“Essex”), for damages. Essex was dismissed from the suit for failure to produce a copy of the insurance policy. After a bench trial, judgment was rendered in favor of the plaintiff awarding $15,000 in general damages, $1,502.82 in lost wages, and $544 in lost details. Trolley Stop filed a Motion for a New Trial, which was denied by the trial court. Subsequently, Trolley Stop filed a Motion and Order for Suspensive Appeal.

DISCUSSION

It is well settled that a trial court’s findings of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173, 1176. Thus, in order to reverse a trial court’s finding of facts, an appellate court must first determine, after reviewing the record in its entirety, that a reasonable factual basis does not exist for the finding and that the record establishes that it is clearly wrong. Housley v.Cerise, 579 So.2d 973 (La.1991).
In the appellant’s first assignment of error, the Trolley Stop argues that the plaintiff failed to prove by a preponderance of the evidence each of the elements necessary to establish Trolley Stop’s negligence. Trolley Stop contends the three elements were as follows:
|gl. Trolley Stop, Inc. owned the business where plaintiff was injured;
2. Trolley Stop, Inc. employed the waitress who spilled the coffee;
3. Trolley Stop, Inc. owned the coffee pot that shattered.
A review of the record reveals the plaintiffs petition for damages is styled “Gregory Flint v. Trolley Stop & Essex Insurance Company.” However, in the body of the text, the defendant is properly recognized as “Trolley Stop, Inc.”. The trial court’s judgment failed to reflect the corporate nature of the defendant.
In accordance with La. C.C. art. 24, the Trolley Stop, Inc., a Louisiana corporation, was served under its corporate name. The defendant filed its answer without any exceptions to sufficiency of service or right of action. This court deems the omission of “Inc.” in the defendant’s name as harmless error.
This court held in Washington v. Avondale Industries, Inc., 1998-0362, p. 3 (La.App. 4 Cir. 3/18/98), 708 So.2d 1254, 1256-1257: “An employer is answerable for the damage occasioned by his servant in the exercise of the functions in which the servant is employed. La. Civ. Code art. 2320. In the application of Article 2320, an employer’s vicarious liability for conduct not his own extends only to the employee’s tortious conduct, which is within the course and scope of employment.” Reed v. House of Decor, Inc., 468 So.2d 1159, 1161 (La.1985).
Whether a party is hable for the act of a tortfeasor on the basis that the tortfeasor was the party’s employee in the course and scope of employment depends upon the proof and assessment of several factors, including payment of |4wages by the employer, the employer’s power of con *639 trol, the employee’s duty to perform the particular act, the time, place and purpose of the act in relation to service of the employer, the relationship between the employee’s act and the employer’s business, the benefits received by the employer from the act, the motivation of the employee for performing the act, and the reasonable expectation of the employer that the employee would perform the act. Id. at 1161.
Officer Ferrier testified that he and Officer Gina Cousins and Flint visited the Trolley Stop frequently and Dana Maurice had waited on their table during many of their visits to the Trolley Stop. When asked to describe the sequence of events leading to the incident, Officer Cousins testified as follows:
Q. Could you describe, to your best recollection, of what happened?
A. “Um, Greg asked Dana for some more coffee. He motioned her to come over because he needed more coffee. He picked his cup up because she had a habit of overflowing the coffee and it would waste all over the table, and he— so he picked the cup up to hand it to her and she was walking. And as she was walking she was rushing along, and she went to pour the coffee and she hit the cup. And I don’t know if the glass exploded or the cup, I’m not sure, but I know coffee went everywhere.”
It is evident Flint and the other officers present at the time of the incident were familiar with Dana Maurice in her capacity as a waitress employed by the Trolley Stop restaurant. The trial court was presented sufficient evidence to conclude Dana Maurice’s tortious conduct occurred during the course and scope of her employment with the Trolley Stop.
| ¡¿Further, Trolley Stop alleges the plaintiff failed to prove the last element, ownership of the coffeepot used on the morning of the incident.
Officer Cousins testified that the coffeepot used on the morning of the incident was the same type of coffeepot used during previous visits to the restaurant and it appeared to be in good condition prior to the accident.
The record reflects Flint was injured in the Trolley Stop restaurant. The witnesses testified Dana Maurice had served them as waitress on several occasions, including the morning of the incident. There was also testimony that the coffeepot, which was in good condition prior to the accident, was a commonly used type of carafe in the restaurant. The Trolley Stop failed to call any witnesses or experts to refute the testimony rendered at trial.
This court finds the trial court did not abuse its discretion in finding the Trolley Stop was the correct corporate entity to file suit against and it was sued in its capacity as a Louisiana corporation. Moreover, Dana Maurice was clearly in the scope of her employment as a waitress for the Trolley Stop. Therefore, Trolley Stop is legally responsible for the damages Dana Maurice caused under the doctrine of respondeat superior.
In appellant’s second assignment of error, the Trolley Stop alleges the damages awarded to the plaintiff are excessive. Thus, we must determine whether an award of $15,000.00 in general damages, $1,502.82 in lost wages, and $544 in lost details is an abuse of discretion.
| fiThe trial court has great discretion when assessing damages. An appellate court should not disturb an award unless it is an abuse of discretion. See Guillen v. Transit Management of Southeast Louisiana, 94-0947 (La.App. 4 Cir. 12/28/94), 648 So.2d 487. The initial inquiry is whether the award for the particular *640 injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the great discretion of the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379. General damages involve physical and mental pain and suffering, inconvenience, loss of intellectual gratification or physical enjoyment, and other factors, which affect the victim’s life. Delphen v. Dep’t of Transp. and Dev., 94-1261, pp. 13-14 (La.App. 4 Cir. 5/24/95), 657 So.2d 328, 336.
The medical records of Dr. Norman McSwain, M.D., an emergency room physician, stated the plaintiff sustained second-degree burns on his right hand, groin areas, and his abdomen. Flint was subsequently admitted to the hospital for two days. Upon his discharge from the hospital, Flint was instructed to schedule followup visits with Dr. McSwain in addition to undergoing physical therapy. At the trial on the merits, the plaintiff testified the skin discoloration from the burns remained noticeable on his hand, thighs, and stomach.
Flint did not return to work until three weeks after the incident and he was placed on “light” duty upon his return to work, which lasted for several months. This court finds that the record supports the trial court’s damage award. Therefore, |7we find that the trial court’s award of damages did not constitute a clear abuse of discretion.
In the appellant’s third assignment of error, the Trolley Stop avers the trial court erred in not attributing any fault to the plaintiff for lifting his coffee mug into the air, causing the collision between the coffee pot and coffee mug.
In assessing the trial court’s allocation of fault regarding general damages awards, this court applies the following standard: “By analogy the trier of fact is owed some deference in allocating fault, for the finding of percentages of fault pursuant to the comparative fault article. La. Civ.Code art. 2323 is also a factual determination. There is an analogy between excessive or inadequate quantum determinations and excessive or inadequate fault percentage determinations. In both, the trier of fact, unlike the appellate court, has had the benefit of witnessing the entire trial and of reviewing first hand all the evidence. After the court of appeal finds a “clearly wrong” apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion.” Riley v. Reliance Ins. Co., 97-0445, p. 6 (La.App. 4 Cir. 11/19/97), 703 So.2d 158, 163. See also Clement v. Frey, 96-1119, 95-1163 pp. 7-8 (La.1/16/96), 666 So.2d 607, 610-611.
Officer Gina Cousins testified Dana Maurice had a habit of overflowing coffee cups and Dana was in a rush because the restaurant was busy that morning. Officer Robert Ferrier stated he and Officers Flint and Cousins were regulars at the IsTrolley Stop where Dana Maurice usually waited on their table. He explained the sequence of events as follows:
Q. Was she acting in a different manner from her usual?
A. Sometimes she would sit and talk with us and converse with us. She was, you know, a nice waitress. But at that time she was rushing. She appeared to be rushing.
Q. Did you hear how hard or see how hard—
A. She hit it — she hit it relatively hard. You heard — you heard a pretty loud smashing sound at which time the coffee pot exploded.
*641 Q. And just from what you saw do you believe the accident could have been avoided?
A. Yes.
Flint and two of the officers that were present during the incident testified that Dana Maurice was working hurriedly, because there were a large number of patrons in the restaurant. There was also testimony regarding Dana’s propensity for overfilling a coffee cup. In order to prevent such an overflow, Flint testified to the following order of events:
Q. When she hit your cup, was it a tap or was it a slam?
A. It slammed into the cup.
Q. When it slammed into the cup what happened to the coffee?
A. Uh, the pot burst and the coffee went all over me.
Q. Where did it go?
A. Uh, well, when I picked my cup up to bring it over to my right side, before I could put it down I had my cup in my right hand. Before I could put it down she had went to pour the coffee and slammed the pot into it so the coffee spilled on my right hand, to the table, and then into my lap.
lain the trial court’s written reasons, it stated, “the waitress employed by the Trolley Stop proceeded in haste in pouring the coffee, and thus was negligent.” Therefore, the trial court did not find that Flint’s actions warranted apportionment of some degree of fault. Based on the testimony of Flint in conjunction with that of the two witnesses and medical records introduced into evidence at trial, this court does not find the trial court’s decision to apportion 100% of the fault to the defendant clearly wrong.

CONCLUSION

For the above mentioned reasons, the trial court’s decision is affirmed.
AFFIRMED.