985 So.2d 832 (2008)
CITY OF NEW ORLEANS
v.
BADINE LAND LIMITED.
North Peters Development, L.L.C.
v.
City of New Orleans.
North Peters Development, L.L.C.
v.
City of New Orleans.
Nos. 2007-CA-1066, 2007-CA-1067, 2007-CA-1068.
Court of Appeal of Louisiana, Fourth Circuit.
May 21, 2008.
*833 Penya M. Moses-Fields, City Attorney, Heather M. Valliant, Assistant City Attorney, Evelyn F. Pugh, Chief Deputy City Attorney, Franz L. Zibilich, Edward Washington III, Deputy City Attorneys, New Orleans, LA, for the City of New Orleans.
James R. Morton, Charles M. Raymond, Cory S. Morton, Donald J. Miester, Jr., Taggart Morton Ogden Staub & O'Brien, L.L.C., New Orleans, LA, for North Peters Development, L.L.C.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge DENNIS R. BAGNERIS, SR., and Judge MAX N. TOBIAS, JR.).
DENNIS R. BAGNERIS, Sr., Judge.
The Appellant, North Peters Development, L.L.C., appeals the judgment of the district court dismissing its claims against *834 the City of New Orleans. For the following reasons, we affirm.

Facts
North Peters Development, L.L.C., owns property located at 200 North Peters Street in New Orleans. The property is a 35,655 square foot property bounded by North Peters, Iberville, Bienville and Clay Streets. In 1956 the family of Vincent Guercio owned and operated a wholesale food company. At that time there was a warehouse on the property, a section for parking and a small service station. The structures were later demolished and the premises were used as a surface parking lot. In 1994 the Guercio family transferred the property to North Peters Development, L.L.C. In 1997 architect John Williams submitted plans to the City of New Orleans for a building permit of a retail store. Mr. Williams was hired by North Peters Development L.L.C.
Badine Land Limited., owned land adjacent to 200 North Peters. In 1994 the City instituted a lawsuit against Badine over the ownership of certain parcels of real estate. The lawsuit was settled on March 4, 1999 when the New Orleans City Council adopted an ordinance authorizing the mayor to enter into an agreement with Badine. The agreement revoked the dedication of Clay Street as a public thoroughfare giving it to Badine. Further, the parties agreed that in return, the City was to receive four parcels of land claimed to be owned by Badine. This was officially done on June 19, 1999 via "Act of Exchange, Revocation of Dedication and Dedication." In the Act of Donation, Badine gave North Peters Development, L.L.C. a twelve-foot wide nonexclusive servitude of passage for deliveries.

Procedural History
North Peters Development L.L.C. sought damages in Civil District Court for the Parish of Orleans for the City's inverse condemnation of its property in July 2000. Trial on the matter began on January 8, 2007. On April 10, 2007, the district court entered a judgment in favor of the City dismissing the suit filed by North Peters Development, L.L.C. It is from this judgment that North Peters Development, L.L.C. timely appeals.

Assignments of Error
North Peters Development, L.L.C. offers the following two assignments: (1) the district court erred as a matter of law in finding that North Peters Development, L.L.C. did not satisfy the second prong of the test in State v. Chambers Inv. Co., Inc., 595 So.2d 598 (La.1992) (discussed infra) and (2) the district court erred as a matter of law in neglecting to award North Peters Development, L.L.C. the damages caused by the City's inverse condemnation of its property. Specifically North Peters Development, L.L.C. argues that the City's revocation of Clay Street as a public thoroughfare substantially altered access to its property destroying its ability to develop it to its "highest and best" use. Further, North Peters Development, L.L.C. avers that the district court erred in neglecting to award it North Peters the damages caused by the revocation of Clay Street enabling North Peters Development, L.L.C. from developing its retail and residential center to the best capacity.

Standard of Review
The standard of review for the instant matter is manifest error.
The proper standard of review for a Louisiana appellate court is whether the trial court is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). While the manifest error standard applies to our review of facts found below, we are required to examine the record as well for legal error. Where an error of law taints the *835 record, we are not bound to affirm the judgment of the lower court. Id. at 844. Furthermore, when a trial court makes one or more prejudicial legal errors which interdict the fact-finding process, the manifest error standard is no longer applicable, and the appellate court is obliged to make its own independent, de novo review of the record if such is complete. Evans v. Lungrin, 97-0541, 97-0577, p. 7 (La.2/6/98), 708 So.2d 731, 735; McLean v. Hunter, 495 So.2d 1298, 1303-04 (La.1986). The Supreme Court stated in Evans: "Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." Evans 708 So.2d at 735. However, under Evans, a de novo review should not be undertaken for every evidentiary exclusion error. De novo review should be limited to consequential errors, which are those that have prejudiced or tainted the verdict rendered. Wingfield v. State ex. rel. Dept. of Transportation and Development, 2001-2668, 2001-2669, p. 15 (La.App. 1 Cir. 11/8/02), 835 So.2d 785, 799.
In re Succession of Sporl, XXXX-XXXX, pp. 4-5 (La.App.4/6/05), 900 So.2d 1054, 1058.

Argument
We address both assignments of error together since whether or not the district court erred in its application of Chambers determines if North Peters Development, L.L.C. is entitled to damages under the laws of inverse condemnation. North Peters Development, L.L.C. argues that when the City revoked the public dedication of Clay Street, it removed approximately 36% of the total street access that North Peters previously enjoyed and that such a closure interferes with its right of access. It further contends that the district court erred in concluding that North Peters Development, L.L.C.'s plans to build were "highly speculative." The Appellants rely on the trial testimony of Dr. Wade R. Ragas who testified that the best use of the 200 North Peters property was as a retail/residential development.
LSA-Const. Art. I, § 4(B)(1) states:
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity.
The Louisiana Constitution, Article I, Section 4 provides for compensation to a landowner whose property rights are taken or damaged. When a landowner suffers a taking or damage in the absence of an expropriation proceeding he may seek compensation through an inverse condemnation action. Constance v. State Through Dept. of Transp. and Development, Office of Hwys., 626 So.2d 1151, 1156 (La.1993); and Reymond v. State Through Dept. of Highways, 255 La. 425, 447, 231 So.2d 375, 383 (La.1970). The Louisiana Supreme Court in State, Through Dept. of Transp. and Development v. Chambers Inv. Co., Inc., 595 So.2d 598 (La.1992), acknowledged that under the Constitution compensation is required even though the State has not initiated an expropriation proceeding and physically taken property from the owner. Id. at 602; also see Reymond, supra. The Chambers court went on to set forth a three-prong test to assist in establishing whether a constitutional taking has occurred. The factors for the court to decide are as follows: 1) whether a person's legal right with respect to a thing or an object has *836 been affected; 2) whether the property, either a right or a thing, has been taken or damaged, in a constitutional sense; and 3) whether the taking or damaging was for a public purpose. Id., 595 So.2d at 603.
North Peters Development, L.L.C. argues that its property was "taken or damaged in a constitutional sense" and that the district court erroneously applied the test set out in Chambers, supra.
Our review of the record reveals that the transfer of Clay Street may interfere with 200 North Peters; however, we cannot conclude that the property was "taken" or "damaged." Further, we find that the interference is minor and cannot be measured by the possible future plans of North Peters Development, L.L.C. La. Civil Code Art. 668 reads:
Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors's [neighbor's] house, because this act occasions only an inconvenience, but not a real damage.
The Appellant obtained a permit to build its retail store in 1994. By 1997 the permit expired and today, there is no retail establishment and no tenants have been secured to support the building of such an establishment. It would be mere speculation if this Court, or the district court, were to conclude that access to the phantom establishment was obstructed in such a way that the Appellants are due damages. The district court noted in its Reasons for Judgment:
North Peters did not lose any actual property in this transaction. Its property at 200 N. Peters retained the same boundaries and square footage both before and after Clay Street was transferred to Badine Land. Thus, no expropriation took place. However, North Peters alleges that the transfer of Clay Street prohibited it from moving forward with its plans to develop the retail center.
...
It is difficult to isolate market forces that may make a good idea impractical or a mediocre idea a huge success. What is clear, however, is that the North Peters property had the same boundaries before and after Badine/City land swap. Access to the property, while changed, was not destroyed. Its use as a surface parking lot was not altered and, in fact, revenue after the land swap increased due to a newly negotiated lease. The right to develop the property still exists. The fact that North Peters may have lost a valuable zoning waiver was unrelated to the land swap. That "asset" was lost when North Peters failed to act on its application in a timely manner or failed to reapply for it.
In a recent Fourth Circuit opinion, the State of Louisiana, Department of Transportation and Development appealed the district court's finding that the appellee, SDS, Inc., was entitled to damages after it filed an inverse condemnation claim. This case is distinguishable in that the Court recognized that "the completed project resulted in the loss of previously enjoyed property rights. More specifically, the property could no longer be accessed by 18-wheeler trucks, and therefore could not *837 be used for its highest and best use as an industrial warehouse."[1] In SDS, Inc. v. State Dept. of Transp. and Development, XXXX-XXXX, (La.App. 4 Cir. 2/13/08) 978 So.2d 1013, writ denied, XXXX-XXXX (La.5/2/08), 979 So.2d 1289, at trial, expert testimony established that the highest and best use of the property was that of an industrial warehouse that was no longer able to operate. In the case at bar, North Peters Development, L.L.C. was not using its property for the retail establishment it at one time envisioned building and to date, nothing has been adversely affected. Further, there is no constitutional "taking" because North Peters Development, L.L.C. did not lose any actual property. The property it possessed remained within the same boundaries after Clay Street was transferred.
La. Civil Code Art. 667 reads in pertinent part:
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
North Peters Development, L.L.C. is still in the planning phase and a servitude is in place when it moves forward with its plans once the plans are perfected.

Decree
For the reasons stated herein, we affirm the findings of the district court.
AFFIRMED.
NOTES
[1] Id. page 834.