SHEROME HANKTON       *       NO. 2019-CA-0557

VERSUS       *

      COURT OF APPEAL

THE STATE OF LOUISIANA,       *
MEDICAL CENTER OF       FOURTH CIRCUIT
LOUISIANA AT NEW       *
ORLEANS (UNIVERSITY       STATE OF LOUISIANA
HOSPITAL), THROUGH THE       * * * * * * *
BOARD OF SUPERVISORS AT
LOUISIANA STATE
UNIVERSITY AND DR. JOHN
DOE

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2010-08420, DIVISION "B-1"
Honorable Rachael Johnson, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Chief Judge James F. McKay, III, Judge Terri F. Love, Judge Dale N. Atkins)

Jacques F. Bezou
Matthew L. Devereaux
Jacques F. Bezou, Jr.
Erica A. Hyla
THE BEZOU LAW FIRM
534 E. Boston Street
Covington, LA 70433

      COUNSEL FOR PLAINTIFF/APPELLEE

JEFF LANDRY
ATTORNEY GENERAL
RICHARD T. SIMMONS, JR.
CHARLES G. CLAYTON, IV
Special Assistant Attorney Generals
Hailey, McNamara, Hall, Larmann &
Papale, LLP
One Galleria Boulevard, Suite 1400
P.O. Box 8288
Metairie, LA  70011-8288

    COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED IN PART;**
**AMENDED IN PART AND AFFIRMED AS AMENDED**
**MARCH 4, 2020**

This is a personal injury case. Appellee, Sherome Hankton ("Officer Hankton"), a New Orleans Police Department ("NOPD") officer, was attacked by a NOPD prisoner, Conrad Jackson ("Mr. Jackson"), while Officer Hankton was guarding Mr. Jackson during a hospital stay. Mr. Jackson was being treated at Medical Center of Louisiana at New Orleans ("University Hospital") for injuries he sustained during his arrest.

Officer Hankton filed a personal injury lawsuit against University Hospital through the Board of Supervisors at Louisiana State University and Dr. John Doe (herein collectively, the "Appellants") for the injuries she sustained from the attack. The trial court rendered judgment on December 10, 2018, in favor of Officer Hankton, finding Appellants forty percent (40%) at fault and Officer Hankton ten percent (10%) at fault for the injuries Officer Hankton sustained. The trial court also awarded Officer Hankton the amount of $250,552.49 in future medical expenses, and directed the award be placed in a revisionary trust in accordance with La. R.S. 13:5106(B)(3)(c). Appellants now appeal this judgment.

For the following reasons, we affirm in part, the trial court's December 10, 2018 judgment allocating forty percent (40%) of fault to Appellants and ten

percent (10%) of fault to Officer Hankton, and awarding Officer Hankton a total of $250,552.49 in future medical expenses. We further amend in part, and affirm as amended, the trial court's judgment directing the future medical expenses award be placed in a revisionary trust and order that Officer Hankton's award of future medical expenses shall be paid from the Future Medical Care Fund directly to Officer Hankton's medical providers as the expenses are incurred in accordance with La. R.S. 13:5106(B)(3)(c).

## FACTUAL BACKGROUND

In 2009, Mr. Jackson was arrested for armed robbery by the NOPD and was injured jumping from a two-story building while eluding police. After Mr. Jackson was arrested, he was admitted to University Hospital for treatment. On November 24, 2009, while Officer Hankton was assigned to guard Mr. Jackson at University Hospital, Mr. Jackson attacked her, stabbing and biting her several times.

As a result of the attack, Officer Hankton sustained extensive injuries, including twenty-five (25) plus stab wounds; a broken jaw; bite wounds to her right wrist; and a crushed left thumb. She had to undergo metacarpal removal surgery, joint replacement surgery on her right thumb and right fourth finger; a procedure to fuse her L3-4, L4-5, L5-S1 spinal vertebrae; another procedure for her spinal vertebrae L3-S1 post-instrumentation; a discectomy; a laminectomy; and she had a bone graft at her L3-L5 spinal vertebrae. She also suffered from significant nerve damage, migraine headaches, depression, and reduced libido.

## PROCEDURAL HISTORY

On August 16, 2010, Officer Hankton filed a petition for damages against Appellants seeking relief for the injuries she sustained from Mr. Jackson's attack. On April 17, 2015, the City of New Orleans (the "City") filed a Petition of Intervention and Motion for Leave to Intervene, requesting to intervene in this matter and to be reimbursed expenses paid to Officer Hankton under the Louisiana Workers' Compensation Act.[1] The parties signed a joint stipulation of intervention agreeing that the City would be permitted to intervene in this matter. Additionally, the parties stipulated the City had a "statutory lien in the amount of $201,094.05," which would be subject to any reduction after an assessment of "Moody Fee," comparative fault of Officer Hankton, or comparative fault of the City.

A bench trial commenced on June 18, 2018, and lasted six (6) days. The testimony of Officer Hankton, NOPD Officer Tracy Fulton ("Officer Fulton"), Deputy Chief of Police for University Police Department T.J. Freeman ("Mr. Freeman"), expert life care planner Lacy Sapp ("Ms. Sapp"), John Kocke ("Mr. Kocke"), and Dr. Ken Boudreaux ("Dr. Boudreax") was presented at trial. Mr. Jackson's pre-trial deposition was also introduced into evidence at trial. Appellants also presented George Armbruster ("Mr. Armbruster"), an expert in the field of police policies, procedures, and training, who testified regarding industry guard duty protocols.

After trial, the trial court permitted the parties (Officer Hankton, Appellants, and the City) to file post-trial briefs. On December 10, 2018, the trial court rendered the following judgment, in favor of Officer Hankton:

---

[1] The City is not a party in this appeal.

(1)    Assessed fault between the parties as such:

a.    Conrad Jackson- 50%;
b.    Appellants- 40%; and
c.    Appellee- 10%

(2)    The trial court awarded Appellee the following:

a.    $650,000.00 in general damages;
b.    $165,484.95 in past medical expenses; and
c.    $68, 250.00 in past lost wages;

(3)    Awarded Appellee $250,552.49 in future medical expenses, which shall be placed into a revisionary trust;

(4)    Awarded Appellee a total of $1,134,287.44 plus judicial interest; and

(5)    Reduced Intervenor, City of New Orleans, $201,094.05 Workers' Compensation lien by ten percent (10%) and subject to a 1/3 Moody Fee.

It is from this judgment Appellants appeal.

## STANDARD OF REVIEW

"Appellate courts review findings of fact made by the trial court judge using the manifestly erroneous or clearly wrong standard of review." *Keller v. Monteleon Hotel*, 2009-1327, p. 2 (La. App. 4 Cir. 6/23/10), 43 So.3d 1041, 1042 (citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)). "It is well settled that a trial court's findings of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous." *Flint v. Trolley Stop*, 2002-1423, p. 2 (La. App. 4 Cir. 4/9/03), 843 So.2d 635, 638 (citing *Syrie v. Schilhab*, 1996-1027 (La.5/20/97), 693 So.2d 1173, 1176).

To reverse findings of fact by the factfinder, "'an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a

4

reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong.'" *Harold A. Asher, CPA, LLC v. Haik*, 2012-0771, p. 4 (La. App. 4 Cir. 4/10/13), 116 So.3d 720, 723-24 (quoting *S.J. v. Lafayette Parish Sch. Bd.*, 2009-2195, p. 12 (La. 7/6/10), 41 So.3d 1119, 1127). In *S.J.*, the Louisiana Supreme Court articulated that:

> Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

2009-2195, pp. 12-13, 41 So.3d at 1127. (Citations omitted).

"While the manifest error standard applies to our review of facts found below, we are required to examine the record as well for legal error." *City of New Orleans v. Badine Land Ltd.*, 2007-1066, p. 3 (La. App. 4 Cir. 5/21/08), 985 So.2d 832, 834. "[L]egal errors are reviewed under the *de novo* standard of review." *1026 Conti Condominiums, LLC v. 1025 Bienville, LLC*, 2015-0301, p. 5 (La. App. 4 Cir. 12/23/2015), 183 So.3d 724, 727. "A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial." *Id.* "Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." *Evans v. Lungrin,* 1997-0541, p. 7 (La. 2/6/98), 708 So.2d 731, 735. "Where an error of law taints the record, we are not bound to affirm the judgment of the lower court." *City of New Orleans*, 2007-1066, p. 3, 985 So.2d at 834-35.

5

In addition, this appeal presents "'mixed questions of law and fact,'" in which the manifest error standard of review is applied. *Harold A. Asher, CPA, LLC*, 2012-0771, p. 5, 116 So.3d at 724 (quoting *Serou v. Touro Infirmary*, 2012-0089, p. 18 (La. App. 4 Cir. 1/9/13), 105 So.3d 1068, 1083).

## DISCUSSION

On appeal, Appellants raise five issues, which we have consolidated into three issues for purposes of this discussion. The issues are as follows: (1) whether the trial court erred in assessing forty percent (40%) of fault to University Hospital and assessing ten percent (10%) of fault to Officer Hankton, while failing to assess any fault to the NOPD; (2) whether the trial court erred in awarding Officer Hankton $250,552.49 in future medical expenses; and (3) whether the trial court erred ordering that the award of future medical expenses be placed in a revisionary trust pursuant to La. R.S. 13:5106(B)(3)(c).

### I.     Allocation of Fault by the Trial Court and Comparative Fault

Appellants argue the trial court erred in allocating Appellants forty percent (40%) of fault, ten percent (10%) of fault to Officer Hankton, and no fault to the NOPD.

"In any action for damages, the trier-of-fact must determine the percentage of fault of all persons causing or contributing to the damage, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, or whether that person's identity is not known or reasonably ascertainable…". La. C.C. art. 2323(A); *See also Dupree v. City of New Orleans*, 1999-3651, p. 18 (La. 8/31/00), 762 So.2d 1002, 1015. "A trial court's findings regarding percentages of fault are factual, and will not be disturbed on appeal unless clearly wrong." *Magri v. Jazz Casino Co., LLC*, 2019-

6

0064, p. 9 (La. App. 4 Cir. 6/26/19), 275 So.3d 352, 359 (citing *Purvis v. Grant Parish Sch. Bd.*, 2013-1424, p. 4 (La. 2/14/14), 144 So.3d 922, 926).

"An appellate court's determination of whether the trial court was clearly wrong in its allocation of fault is guided by the factors set forth in *Watson v. State Farm and Cas. Ins. Co.*, 469 So. 967 (La. 1985)." *Magri*, 2019-0064, p. 9, 275 So.3d at 359. In *Watson*, the Louisiana Supreme Court established "various factors may influence the degree of fault assigned, including:"

> (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.

469 So.2d at 974 (La. 1985) (quoting Uniform Comparative Fault Act, 2(b)).

In Louisiana, it is well settled that "[a]llocation of fault is not an exact science, or the search for one precise ratio, but rather an acceptable range. Allocations of fault within such a range cannot be clearly wrong." *Antippas v. NOLA Hotel Group, LLC*, 2017-0798, p. 4 (La. App. 4 Cir. 2/27/19), 265 So.3d 1212, 1216. "The determination of whether comparative fault applies in a particular case is essentially a factual one and subject to the manifest error standard on appellate review." *Maldonado v. Louisiana Superdome Com'n*, 1995-2490, p. 10 (La. App. 4 Cir. 1/22/97), 687 So.2d 1087, 1093 (citing *Clement v. Frey*, 1995-1119, p. 7 (La.1/16/96), 666 So.2d 607, 610-11). "Only if the apportionment of fault is found to be clearly wrong can an appellate court adjust percentages." *Id.*

### A. Officer Hankton's Allocation of Fault

In the instant matter, Appellants argue Officer Hankton should be allocated a greater percentage of fault as the evidence shows that she breached her duties

while guarding Mr. Jackson. Conversely, Officer Hankton argues the trial court, as the fact finder, acknowledged her negligence and allocated the proper percentage of fault.

Applying the *Watson* factors, we find Officer Hankton's conduct amounted to inadvertence. In particular, Officer Hankton testified that she did not check to see if Mr. Jackson was restrained in the bed, but rather assumed he was restrained because Officer Fulton was guarding Mr. Jackson prior to her arrival. Further, she testified that she sat in the chair next to Mr. Jackson's bed, which was within Mr. Jackson's reach. As Officer Hankton confirmed, sitting in a chair so close to Mr. Jackson was an act contrary to her training. As such, her conduct inadvertently created the risk that she was accessible to Mr. Jackson. In this instance, we agree with the trial court's findings that Officer Hankton did not act as a reasonable police officer under the circumstances. However, we find that Officer Hankton's conduct was a mere inadvertence. She was not aware that Mr. Jackson was armed with surgical tools and would attack her. Thus, we find the trial court was not manifestly erroneous in allocating ten percent (10%) of fault to Officer Hankton.

### B. Appellants' Allocation of Fault

Next, we address whether the trial court's allocation of fault to Appellants was manifestly erroneous. Appellants, who were assessed forty percent (40%) fault, argue the trial court erred in its assessment of fault.

Applying the *Watson* factors, we find the trial court's factual finding that Appellants created an unreasonable risk of harm for Officer Hankton was not manifestly erroneous. Mr. Freeman, the Deputy Chief of Police for University Police Department, testified that University Hospital's employees did not comply with its policies and admitted that, if surgical tools had been left by Mr. Jackson's

bed by an employee, it was a violation of University Hospital's policies. Mr. Jackson testified, however, that a University Hospital employee (a nurse) left a pair of scissors, a scalpel, and tweezers unattended by his bed. Mr. Jackson testified that he used a pair of "suture removal scissors" to attack Officer Hankton. In its written reasons for judgment, the trial court found, that "but for" University Hospital's failure to safeguard surgical tools in Mr. Jackson's hospital room, he would not have "brutally and repeatedly stabbed" Officer Hankton. We agree.

University Hospital, by admission of its own employee, Mr. Freeman, violated its policies in failing to secure surgical tools that were used as a weapon to attack Officer Hankton. This failure created an unreasonable risk of harm to Officer Hankton. Notably, while Appellants contest its assessment of fault, the trial court allocated the highest percentage of fault to Mr. Jackson, assessing him fifty percent (50%) of fault. Thus, we do not find that the trial court erred in allocating forty percent (40%) of fault to Appellants.

### C. NOPD's Allocation of Fault

Last, Appellants argue that the trial court erred in failing to assess any fault to the NOPD, as the NOPD was the entity responsible for properly restraining Mr. Jackson in the hospital room. To counter this argument, Officer Hankton argues Appellants did not present any evidence to establish the NOPD's negligence.

The Louisiana Supreme Court has articulated that: "[t]o the extent that a party defendant seeks to have the benefit of comparative fault of another as an affirmative defense…it bears the burden of proof by a preponderance of the evidence that the other party's fault was a cause-in-fact of the damage being complained about." *Dupree*, 1999-3651, p. 18, 765 So.2d at 1014, n.13.

9

"[I]n order to apportion comparative fault for negligence, it was incumbent upon the [defendant] to establish a standard of care and a breach in the standard of care that caused Plaintiffs' damages." *Sewell v. Sewerage and Water Board New Orleans*, 2018-0996, p. 15 (La. App. 4 Cir. 5/29/19), 2019 WL2305673, at *8. Accordingly, Appellants have to prove by a preponderance of evidence that the NOPD owed a duty to Officer Hankton and breached that duty.

The record reflects that Appellants did not meet this burden. A review of the record shows that the NOPD's policies and procedures were not introduced into evidence at trial. Moreover, Appellants did not present any experts to testify regarding the NOPD's policies and procedures that were in place at the time of the attack. While Officer Fulton testified as to his police training, he was not qualified as an expert to testify as to the NOPD's policies and procedures. Additionally, Mr. Armbruster, Appellants' expert in police policies, procedures, and training, could not testify as to the NOPD's policies and procedures because he was not qualified as an expert on the NOPD's policies and procedures. Thus, we find the trial court did not commit manifest error in failing to assess fault to the NOPD.

Appellate courts must give great deference to the fact finder's allocation of fault. *Dupree*, 1999-3651, p. 19, 765 So.2d at 1015. Thus, this court must give deference to the trial court's allocation of fault, unless we determine it was "clearly wrong." *Id.* We do not find the trial court's factual findings were clearly wrong. Based on the evidence and testimony presented at trial, the trial court assessed the percentages of fault it determined were appropriate, and we find the trial court's factual findings are well supported by the record and are not manifestly erroneous. Thus, we affirm the trial court's allocation of fault assessing forty percent (40%) of fault to Appellants, ten percent (10%) to Officer Hankton, and no fault to NOPD.

10

**II.     Award of Future Medical Expenses to Officer Hankton**

Next, we consider Appellants' argument that the trial court erred in awarding Officer Hankton $250,552.49 for future medical expenses. Appellants argue that this amount is completely unsupported by the trial record. Conversely, Officer Hankton argues the trial court's award was proper. We find Appellants' argument lacks merit.

"The proper standard for the trial court's determination of whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expenses will be medically necessary." *Gaunt v. Progressive Sec. Ins. Co.*, 2011-1094, p. 34 (La. App. 4 Cir. 6/8/12), 92 So.3d 1250, 1272 (citing *Moody v. Cummings*, 2009-1233, p. 15 (La. App. 4 Cir. 4/14/10), 37 So.3d 1054, 1064). Further,

> Future medicals need not be established with mathematical certainty…Although a plaintiff is not required to prove the exact value of the necessary expenses, some evidence to support the award must be contained in the record. If the fact finder can determine from…evidence a minimal amount that reasonable minds could agree upon, then an award is proper.

*Id.* (quoting *Molony v. USAA Prop. & Cas. Ins. Co.*, 1997-1836, pp. 2-3 (La. App. 4 Cir. 3/4/98), 708 So.2d 1220, 1221-22).

"[W]hen opinions of expert witnesses differ, it is for the jury to determine the most credible evidence and these determinations will not be overturned unless it is proven that the expert's stated reasons are patently unsound." *Bass v. State*, 2014-0441, pp. 8-9 (La. App. 1 Cir. 11/7/14), 167 So.3d 711, 718 (citing *Brown v. City of Madisonville,* 2007-2104, p. 7 (La. App. 1 Cir. 11/24/08), 5 So.3d 874, 881). In making a factual conclusion regarding damages, great deference is afforded a judge's assessment of the appropriate amount of damages. *Menard v.*

*Lafayette Ins. Co.*, 2009-1869, p. 14 (La. 3/16/10), 31 So.3d 996, 1007. "An appellate court, in reviewing a jury's factual conclusions with regard to special damages, must satisfy a two-step process based on the record as a whole: there must be no ***reasonable*** factual basis for the trial court's conclusion, and the finding must be clearly wrong." *Id.* (Emphasis in original).

We find that there is a reasonable factual basis for the trial court's award of future medical expenses to Officer Hankton in the record. Officer Hankton testified that she sustained severe and permanent injuries from Mr. Jackson's attack, including losing the strength in one of her hands, and suffering from other ongoing physical and psychological effects. Officer Hankton testified that she has undergone several surgeries to repair her injuries since the attack and must undergo more in the future. Officer Hankton testified that she is still being treated by a neurologist, psychiatrist, and social worker. The record therefore demonstrates that Officer Hankton proved by a preponderance of the evidence that she will undergo medically necessary care in the future.

The parties presented expert witnesses to testify regarding the cost of Officer Hankton's future medical care. Officer Hankton's expert life care planner, Ms. Sapp, testified that Officer Hankton's medical cost would range from $557,738.10 to $827,880.96. Appellants' expert life care planner Mr. Kocke projected substantially lower costs for Officer Hankton's future medical expenses, saying Officer Hankton's costs would be within the range of $25,542.00 to $60,954.00. Appellants argue that Dr. Boudreaux, Appellants' economist, also testified to similar ranges as Mr. Kocke and that Dr. Boudreaux estimated that Officer Hankton's future medical and rehabilitation costs are within the range of $41,802.65 to $50,573.16, with a midpoint of $46,187.86.

We find that Appellants' experts were unreliable. Mr. Kocke admitted that his calculations were "screwed" and Dr. Boudreaux's initial calculations were based on Mr. Kocke's calculations. Further, the trial court based the amount it awarded for future medical treatment for the attack, including an award for "a psychiatrist, pain management, gym membership, medication, testing and labs and equipment and supplies," which the record shows was medically necessary. Based on Ms. Sapp's calculations, which the record does not show are unreliable, we find that the record supports the trial court's award. Thus, we find the trial court's award for future medical expenses was reasonable.

### III. Placement of Award of Future Medical Expenses in Revisionary Trust

Last, we consider whether the trial court committed legal error in ordering that the award for future medical expenses be placed in a revisionary trust pursuant to La. R.S. 13:5106(B)(3)(c). Appellants argue that they are "state agencies," and thus, pursuant to La. R.S. 13:5106(B)(3)(c), the future medical care expenses incurred by Officer Hankton should shall be paid directly to the providers from the Future Medical Care Fund established by R.S. 39:1533.2 as the expenses are incurred. Officer Hankton counters that the trial court properly ordered that the future medical expenses should be placed in a revisionary trust pursuant to La. R.S. 13:5106(B)(3)(a) because Appellants are "political subdivisions" as opposed to "state agencies."

We find that the trial court committed a reversible error of law in ordering that Officer Hankton's award of future medical expenses be placed in a revisionary trust. Therefore, we review this assignment of error *de novo* and render judgment accordingly. *See Rosell v. ESCO*, 549 So.2d 840, 844, n.2 (La. 1989) ("[W]hen the

court of appeal finds that a reversible error of law…was made in the trial court, it is required to redetermine the facts *de novo* from the entire record and render a judgment on the merits.")

La. R.S. 13:5106(B)(3)(a) provides that:

> In any suit for personal injury against a political subdivision wherein the court…determines that the claimant is entitled to medical care and related benefits that may be incurred subsequent to judgment, the court shall order that a reversionary trust be established for the benefit of the claimant and that all medical care and related benefits incurred subsequent to judgment be paid pursuant to the reversionary trust instrument.

La. R.S. 13:5106(B)(3)(c) provides, however, that:

> In any suit for personal injury against the state or a state agency wherein the court…determines that the claimant is entitled to medical care and related benefits that may be incurred subsequent to judgment, all such medical care and related benefits incurred subsequent to judgment shall be paid from the Future Medical Care Fund as provided in R.S. 39:1533.2…[and] shall be paid directly to the provider as they are incurred.

Therefore, to address the propriety of the trial court's order that Officer Hankton's award of future medical expenses be placed in a revisionary trust, we must determine whether Appellants are "state agencies" or "political subdivisions."

La. R.S. 13:5102 defines a "state agency" as "any board, commission, department, agency, special district, authority, or other entity of the state." Conversely, La. Const. Art. 6 § 44 defines a "political subdivision" as "…a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions." Further, La. R.S. 13:5102(B)(1) provides that political subdivisions also include "[a]ny parish, municipality, special district, school board, sheriff, public board, institution, department, commission, district, corporation, agency, authority, or an agency or

14

subdivision of any of these, and other public or governmental body of any kind which is not a state agency."

The Louisiana Supreme Court has already held that the Appellants in this case, the LSU Board of Supervisors and University Hospital, are state agencies. *See Whitley v. State ex. Rel Bd. Of Sup'rs of Louisiana State University Agr. Mechanical College*, 2011-0040 (La. 7/1/11), 66 So.3d 470. Likewise, the First Circuit Court of Appeal has found that, "[b]ased on the clear language of La. R.S. 13:5102(A) and (B), the LSU Board is a state agency." *Fecke v. Board of Supervisors of Louisiana State University*, 2015-0017, p. 10 (La. App. 1 Cir. 7/7/15), 180 So.3d 326, 337. Therefore, we hold that the Appellants in this case are state agencies and the provisions of La. R.S. 13:5106(B)(3)(c) apply. The trial court erred in ordering Officer Hankton's future medical expenses be placed in a revisionary trust pursuant to La. R.S. 13:5106(B)(3)(c). Thus, we amend the judgment to comply with La. R.S. 13:5106(B)(3)(c), and order that Officer Hankton's award of future medical expenses be paid from the Future Medical Care Fund directly to Officer Hankton's medical providers as the expenses are incurred.

## DECREE

For the foregoing reasons, we affirm in part the trial court's December 10, 2018 judgment finding Appellants forty percent (40%) at fault and awarding Officer Hankton a total of $250,552.49 in future medical expenses. Further, we amend in part, and affirm as amended, the trial court's December 10, 2018 judgment directing Officer Hankton's future medical expenses be placed in a revisionary trust.

15

The award for future medical expenses shall be paid directly to the medical providers from the Future Medical Care Fund as the expenses are incurred in accordance with La. R.S. 13:5106(B)(3)(c).

**AFFIRMED IN PART;**
**AMENDED IN PART AND AFFIRMED AS AMENDED**

16