<span style="color:red">**CORRECTED OPINION**</span>

| | | |
|---|---|---|
| **BRIANNA CARRIE** | * | **NO. 2021-CA-0659** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **WILLIE JONES** | * | |
| | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-03906, DIVISION "I"
Honorable Lori Jupiter, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge
Paula A. Brown)

Brianna Carrie
8319 Apple Street
New Orleans, LA 70118

    *PRO SE* PLAINTIFF/APPELLEE

Richard G. Perque
LAW OFFICES OF RICHARD G. PERQUE, LLC
700 Camp Street
New Orleans, LA 70130

    COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**JANUARY 21, 2022**

This is a civil appeal arising out of alleged domestic abuse. Plaintiff/Appellee, Brianna Carrie ("Plaintiff"), filed a petition for protection from abuse from Defendant/Appellant, Willie Jones ("Defendant"). Following a hearing, the district court entered judgment in favor of Plaintiff and issued a twelve (12) month order of protection against Defendant. It is from this judgment Defendant seeks appellate review. For the reasons that follow, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 7, 2021, Plaintiff filed, in the district court, a petition for protection from abuse, pursuant to La. R.S. 46:2131 *et seq.*[1] (the "Petition"), against Defendant. Plaintiff alleged that she and Defendant formerly dated and share a child in common.[2] Plaintiff contended that Defendant had slapped, choked, stalked, threatened her life with bodily harm, and verbally and mentally harassed her. Plaintiff complained that in the most recent incidents of abuse Defendant sent

---

[1] La. R.S. 46:2131 *et seq.* is the Domestic Abuse Assistance Act.

[2] Plaintiff did not seek protection for the minor child.

1

her threatening text messages on April 21, [2021], writing that he hoped Plaintiff would die so that he could take his son away, and a March 21, [2021] text message, wherein Defendant threatened Plaintiff to repay money he loaned her or he "will show" her. Plaintiff alleged that she and Defendant mostly communicated via text, and since she began dating someone else, Defendant has told her repeatedly that if she did not tell him where she lives, he "will show" her and her new boyfriend

Plaintiff also alleged past incidents of abuse. Plaintiff contended in 2019, Defendant appeared at her brother's house with his firearm holstered around his waist and threatened her. Plaintiff further alleged that she and Defendant broke up in 2019, and Defendant has continuously threatened her since that time. Plaintiff contended that because Defendant carries a firearm, she does not feel safe. In 2018, after their son was born, Plaintiff alleged Defendant hit, slapped and choked her.

Plaintiff prayed for immediate issuance of an *ex parte* temporary restraining order ("TRO") to prohibit Defendant from abusing, harassing, assaulting, stalking, and threatening her; to prohibit Defendant from contacting her, including by means of a third party; to prohibit Defendant from going within one hundred (100) yards of her person, residence, and place of employment; to order Defendant not to damage any of her belongings or interfere with her living conditions; to order Defendant to seek professional counseling or complete a court-monitored domestic abuse intervention program; and that Defendant be cast with costs. On May 7, 2021, the district court issued a TRO, effective through the pendency of the protection order hearing (the "hearing") scheduled for May 27, 2021.

On May 17, 2021, Defendant, in opposition to the Petition, filed a motion to dissolve/vacate protection order and dismiss the petition for protection. In that

2

motion, Defendant argued that the protection order was wrongfully issued against him; the petition should have been denied on its face for failure to allege harm, danger or abuse sufficient for *ex parte* relief; Plaintiff is not entitled to the relief of a protection order; and Plaintiff would not prevail in the proof of what is asserted to be entitled to an order of protection. The district court denied Defendant's motion on May 18, 2021.

On May 27, 2021, Plaintiff, in proper person, and Defendant, represented by counsel, appeared for the hearing. At the conclusion of the hearing, the district court, relying on Plaintiff's testimony and photocopies of text message screenshots, issued a twelve (12) month protection order in favor of Plaintiff and against Defendant, effective through May 27, 2022. Defendant was ordered to cease all abuse against Plaintiff and refrain from contacting her, to not go within one hundred (100) yards of Plaintiff's person or her residence, to stay away from her place of employment, and to not damage any of Plaintiff's property and belongings or in any way interfere with Plaintiff's living conditions. The district court ordered Defendant to transfer possession of his firearm to the sheriff's department and ordered him to seek professional counseling and/or complete a court monitored domestic abuse intervention program. The district court granted Plaintiff temporary custody of her and Defendant's shared child in common and ordered supervised visitation for Defendant. All costs were cast against Defendant.

This appeal timely followed.

## STANDARD OF REVIEW

This Court has previously set forth the standard of review for protection orders:

3

"An appellate court reviews domestic orders for an abuse of discretion." *Patterson v. Charles*, 19-0333, p. 9 (La. App. 4 Cir. 9/11/19), 282 So.3d 1075, 1082 (citation omitted). "The trial court sitting as a trier of fact is in the best position to evaluate the demeanor of the witnesses, and its credibility determinations will not be disturbed on appeal absent manifest error." *Id* (citation omitted). In addition, as to evidentiary issues, "[a] trial court is granted broad discretion in its rulings on evidentiary issues which will not be disturbed on appeal absent a clear abuse of that discretion." *Cipolla v. Cox Commc'ns La., LLC*, 19-0509, p. 2 (La. App. 4 Cir. 8/5/20), 305 So.3d 911, 914 (quoting *Freeman v. Phillips 66 Co.*, 16-0247, p. 4 (La. App. 4 Cir. 12/21/16), 208 So.3d 437, 441). The Court is also "required to examine the record ... for legal error." *St. Germain v. St. Germain*, 20-0146, p. 9 (La. App. 4 Cir. 3/17/21), 315 So.3d 443, 450 (citing *City of New Orleans v. Badine Land Ltd.*, 07-1066, p. 3 (La. App. 4 Cir. 5/21/08), 985 So.2d 832, 834). "[L]egal errors are reviewed under the *de novo* standard of review." *Id.* (quoting *1026 Conti Condominiums, LLC v. 1025 Bienville, LLC*, 15-0301, p. 5 (La. App. 4 Cir. 12/23/2015), 183 So.3d 724, 727).

"A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial." *Id.* (citation omitted). "Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." *Id.* (quoting *Evans v. Lungrin*, 97-0541, p. 7 (La. 2/6/98), 708 So.2d 731, 735). "Where an error of law taints the record, we are not bound to affirm the judgment of the lower court." *Id.* (quoting *City of New Orleans*, 07-1066, p. 3, 985 So.2d at 834-35). However, "[a]s long as the trier of fact's findings are reasonable in light of the record as a whole, the appellate court will affirm." *Shaw v. Young*, 15-0974, p. 4 (La. App. 4 Cir. 8/17/16), 199 So.3d 1180, 1184 (citation omitted).

*McKinsey v. Castle*, 2021-0368, pp. 5-6, 2021 WL 3522093, at * 3 (La. App. 4 Cir. 8/10/21). "Thus, in order to reverse a protection order, the appellate court must review the record in its entirety and conclude that a reasonable factual basis does not exist for the finding and the factfinder is clearly wrong or manifestly erroneous." *Launey v. Launey*, 2020-0072, p. 4 (La. App. 3 Cir. 11/12/20), 307 So.3d 280, 283 (citing *State in the Interest of C.D.*, 18-834 (La. App. 4 Cir. 12/19/18), 262 So.3d 929, *writ denied*, 19-120 (La. 3/6/19), 266 So.3d 903).

## DISCUSSION

4

On appeal, Defendant assigns two (2) errors: (1) the district court abused its discretion in the issuance of a protection order by failing to find a violation of the Criminal Code as required pursuant to La. R.S. 46:2132(3) and (2) the district court erred in admitting text messages, which were unauthenticated and lacked the proper foundation, into evidence. Because Defendant's second assigned error is an evidentiary issue, we will address it first.

*Authentication of and Admissibility of the Text Messages*

Defendant, citing La. C.E. art. 901(A), argues that the introduction of the unauthenticated text messages between him and Plaintiff over his objection was in direct contrast to the rules of evidence. Defendant further argues the text messages offered into evidence are inadmissible hearsay as defined by La. C.E. art. 801(C).[3]

At the hearing, after Plaintiff, who appeared *pro se*, was sworn in, the district court proceeded to query her regarding the allegations contained in the Petition. Plaintiff testified that Defendant repeatedly texted her threats and curse words. After she testified, Plaintiff provided the district court with photocopies of twelve (12) screenshots of text message exchanges (the "text messages") between her and Defendant. Before reviewing the documents, the district court instructed defense counsel to review the text messages with Defendant.

Following, the district court, addressing counsel for Defendant, asked, "[H]as your client looked at these and authenticated these? I want to take a look at them. Do you have, is there any objection? Let me take a look at it. [Defendant], can you stand up and raise your right hand?" There being no contemporaneous objection, the district court swore in Defendant and began to question him

---

[3] "'Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(C).

regarding the contents of the text messages. The district court first asked Defendant to recite his phone number. The phone number recited by the Defendant is the number depicted as a sender and recipient of the text messages.

After Defendant authenticated his phone number, the district court read a few text message exchanges in open court, to which Defendant responded that the text messages were not abusive. Defendant further stated that if there were text messages from him, he was retaliating against Plaintiff because of the voicemail messages she left on his phone. The district court advised Plaintiff that she could submit the text messages into evidence, and, again, asked counsel for Defendant if there were any objections. This time, counsel for Defendant lodged an objection to admitting the text messages into evidence on grounds that the text messages were taken out of context, the defense had just received the text messages, and the text messages did not relate to Plaintiff's allegations. The district court overruled Defendant's objection and admitted the text messages into evidence. The district court reasoned that Defendant's authentication of his phone number indicated he had received the text messages within some point in time.

A trial judge shall make the initial authentication decision as to the admissibility of evidence. *State v. Lee*, 2001-2082, p. 9 (La. App. 4 Cir. 8/21/02), 826 So.2d 616, 624; *see also* La C.E. art. 104(A). "'Authentication' is a process whereby something is shown to be what it purports to be." *State v. Coleman*, 2012-1408, p. 22 (La. App. 4 Cir. 1/8/14), 133 So.3d 9, 25 (citing *Malloy v. Vanwinkle*, 1994-2060 (La. App. 4 Cir. 9/28/95), 662 So.2d 96, 100). "[I]t is a fundamental law of evidence that an article or substance which is introduced as demonstrative evidence, or to which a witness is asked to testify, must be sufficiently identified as the one involved in the occurrence in question." *McKinsey*, 2021-0368, p. 7, 2021

WL 3522093, at * 3 (quoting *State v. Hotoph,* 1999-243 (La. App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045)(citation omitted). La. C.E. art. 901(A) provides that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. La. C.E. art. 901(B) provides an illustrative, though not exhaustive, list of examples of authentication or identification of evidence. *See Archaga v. Johnson*, 2019-0085, p. 12 (La. App. 5 Cir. 10/16/19), 280 So.3d 331, 340-341. Authentication of photocopies of text message exchanges may be accomplished by the recipient, or by a person who has personal knowledge of and digitally possesses the original text message exchanges. *Id.*, 2019-0085, p. 13, 280 So.3d at 341.

In the case *sub judice*, both Plaintiff and Defendant authenticated the text messages. Plaintiff offered to introduce the text messages into evidence during her case-in-chief to show threats and abuse endured from Defendant. On cross-examination, Plaintiff testified that all of the text messages were stored on her cell phone. The record is devoid of any additional controverting testimony or evidence elicited from Plaintiff as to the authenticity of the text messages. Defendant, after being duly sworn, testified to his phone number, which is clearly depicted as the sender and recipient of the text messages. When questioned by the district court regarding a specific text message exchange, Defendant admitted to sending Plaintiff the text message. In addition, Defendant testified that the text messages showed the lack of communication he had with Plaintiff; thus, further corroborating that he had sufficient personal knowledge of the text messages, and that he was the sender and recipient of the text messages. We conclude the record supports a finding that the text messages were properly authenticated.

We further conclude that the text messages were not improperly admitted into evidence. La. C.E. art. 801(D)(2)(a) provides that a statement that is offered against a party and is the party's own statement, in either his individual or representative capacity, is not inadmissible hearsay. Because the statements contained in the text messages were made by both Plaintiff and Defendant, the text messages are not inadmissible hearsay.[4]

Accordingly, the district court did not abuse its discretion in authenticating and admitting Plaintiff's text messages. This assignment of error is without merit.

*Issuance of the Protection Order*

In his second assignment of error, Defendant argues that the district court abused its discretion in the issuance of a protection order against him. Specifically, Defendant contends that Plaintiff failed to provide any specific instances of domestic abuse, physical or non-physical, as defined in the Criminal Code of Louisiana as required pursuant to La. R.S. 46:2132(3), and instead the district court solely relied on photocopies of unauthenticated hearsay text messages as evidence of abuse.

Under the Domestic Abuse Assistance Act, a court may issue a protection order pursuant to La. R.S. 46:2131 *et seq.* The intent of the Act is to provide a civil remedy of immediate and easily accessible protection to endangered persons from domestic abuse. *See D.M.S. v. I.D.S.*, 2014-0364, p. 15 (La. App. 4 Cir. 3/4/15), 225 So. 3d 1127, 1137. "'Domestic abuse' includes but is not limited to physical or sexual abuse and any offense against the person, physical or non-physical, as defined in the Criminal Code of Louisiana, except negligent injury and

_____

[4] *See Archaga*, 19-0085, pp. 13-14, 280 So.3d at 341 (wherein the appellate court held that pursuant to La. C.E. art. 801(D)(2)(a), photocopies of text messages admitted into evidence by the plaintiff and against the defendant were not inadmissible hearsay).

defamation, committed by one family member, household member, or dating partner against another." La. R.S. 46:2132(3). Moreover, "the definition of domestic abuse in La. R.S. 46:2132(3) does not include nonphysical acts, such as general harassment and family arguments, unless the non-physical acts constitute an offense against the person as defined in the Louisiana Criminal code." *S.M. v. T.M.*, 2019-369, p. 8 (La. App. 5 Cir. 12/26/19), 289 So.3d 141, 147.

As previously noted, "[a]n appellate court reviews domestic orders for an abuse of discretion." *McKinsey*, 2021-0368, p. 3, 2021 WL 3522093 at * 2. "In accordance with La. R.S. 46:2135 and 46:2136, the issuance of a protection order requires that there be 'good cause shown' [by the petitioner]." *Id.* at * 2 (citation omitted). Pursuant to La. R.S. 46:2135, "good cause shown" is an immediate and present danger of abuse against the petitioner. *See Id.* Upon "good cause shown," the court may enter a TRO, as it deems necessary to protect the petitioner from domestic abuse. *See* La. R.S. 46:2135(A). "The court shall consider any and all past history of abuse, or threats thereof, in determining the existence of an immediate and present danger of abuse." *Id.* "There is no requirement that the abuse itself be recent, immediate, or present." *Id.* The petitioner must show that allegations of abuse are true by a preponderance of the evidence. *See Id.*; *see also Rodriguez v. Claassen*, 2016-0610, pp. 9-10 (La. App. 4 Cir. 12/21/16) 207 So.3d 490, 496-497. "Proof is sufficient to constitute a preponderance of the evidence when the entirety of the evidence, both direct and circumstantial, shows that the fact sought to be proved is more probable than not." *Patterson v. Charles*, 2019-0333, p. 10 (La. App. 4 Cir. 9/11/19) 282 So.3d 1075, 1083 (citing *Head v. Robichaux*, 2018-0366, pp. 3-4 (La. App. 1 Cir. 11/2/18), 265 So.3d 813, 816)(citation omitted).

At the May 27, 2021 hearing, Plaintiff, Defendant and Defendant's wife testified. Plaintiff testified that she and Defendant were dating partners from 2015 until their separation in 2019. After she and Defendant separated, he followed her in his truck, stalked her and threatened her life. Plaintiff relayed a specific incident after the separation, while she was at her brother's house, defendant appeared, uninvited, with his firearm strapped around his hip and demanded to see his son, or he was going to "show" her. Plaintiff said she and Defendant mostly communicated via text message, and Defendant repeatedly texted her threats and curse words. She mostly communicated with Defendant's wife regarding Plaintiff and Defendant's son. Plaintiff testified that because Defendant carries a firearm on him all the time, she does not feel safe. According to Plaintiff, Defendant told her he was going to kill her if she did not repay him money and has told her "I will show you" on multiple occasions, which she interpreted as a threat to her life.

Defendant admitted he texted Plaintiff, but he denied physically threatening, and abusing her. Defendant also affirmed that he owns and carries a firearm but testified that he has never intimidated, threatened, or pointed his firearm at Plaintiff. When specifically questioned by the district court, Defendant admitted he texted Plaintiff on April 21, [2021], stating that he hoped she would just die so that he could take his son away. However, Defendant explained that he has had Plaintiff blocked from calling his phone for over three (3) years and any text message he sent her was in retaliation to the threatening messages she left on his voicemail, wherein Plaintiff allegedly cursed at him and told him she wished he

10

would die.[5]  Defendant said that he and Plaintiff barely communicated, as Plaintiff typically spoke to his wife Angela, regarding their son.

Defendant also testified that when he said he would "show her", he meant that he would show her with legal proceedings; he only threatened to take her to court regarding their son.  Defendant corroborated Plaintiff's testimony that he did go to her brother's house, but he said he only went to see his son.  Defendant relayed that his only request to Plaintiff was for her to repay the $2,500 he loaned her for a car.

Angela testified that she knows Plaintiff from a previous employment relationship.  She recounted that Plaintiff and Defendant share a child and she communicates with Plaintiff on Defendant's behalf.  Angela stated that she does not recall any instances of threats made upon Plaintiff by Defendant.  Angela also affirmed that Defendant owns a firearm and carries it with him all the time but said she had never seen Defendant point it at anyone.

The district court, after hearing the testimony of the parties, issued an order of protection against Defendant.  In reaching its decision, the district court explained:

> [Plaintiff] filed this petition for protection from abuse, she filed it on her behalf and she wants to be protected from you, [Defendant], because she feels that you are a threat to her. The reason why she feel[s] like you're a threat to her [ ] is because she said several incident[s,] one of which she says on April 21 you texted and told her that wish she would die, that's something you have admitted to . . . you testified was true. There is other past incidents (sic) of abuse whereby . . . [Plaintiff] feels like you can be a possible threat or threat to her as not only from April 21 but from a period of a long time in which she has testified today[,] that she's made the decision now to

---

[5] At the hearing, Defendant played a voicemail message, dated October 19, 2021, which purportedly was a recording of Plaintiff making threatening statements to him.  Defendant did not offer any such recordings or statements allegedly made by Plaintiff into evidence, and the record does not contain a transcription of the recording.

come to the court to use the legal system for protection. So therefore, I'm going to grant this petition for protection from abuse.

It is well-settled law that "[w]hen the factual findings are based on the credibility of witness testimony, the appellate court must give great deference to the fact finder's decision to credit witness testimony." *Watts v. Watts*, 2008-0834, p. 2 (La. App. 4 Cir. 4/8/09), 10 So.3d 855, 857 (quoting *Kees v. Kees,* 2008-0124, 08-0125, p. 7 (La. App. 4 Cir. 8/13/08), 992 So.2d 568, 571). "Even if an appellate court feels its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in testimony." *Guste Homes Resident Mgmt. Corp. v. Thomas*, 2020-0110, p. 8 (La. App. 4 Cir. 7/29/20), 302 So.3d 1181, 1187 (quoting *River Garden Apartments v. Robinson*, 2012-0938, pp. 4-5 (La. App. 4 Cir. 1/23/13), 108 So.3d 352, 356).

Our review of the record shows that based on Plaintiff's testimony and the text message exchanges[6] between her and Defendant, a reasonable factual basis exists to support the district court's issuance of a protection order under the Criminal Code for assault.[7] Plaintiff testified that Defendant told her he was going to "kill her" and "show her", which she interpreted as threats on her life, and she did not feel safe because Defendant carries a firearm. Defendant admitted he texted Plaintiff that he hoped she dies. Further, review of the text messages

---

[6] The text messages were riddled with derogatory words and unflattering name-calling. While unpleasant and harsh, name calling alone does not arise to the level of domestic abuse under La. R.S. 46:2131 *et seq.*

[7] An "[a]ssault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. 14:36. In *Claassen, supra*, this Court reasoned that although "words alone may not be sufficient to constitute an assault, … threats coupled with the present ability to carry out the threats are sufficient when one is placed in reasonable apprehension of receiving injury." *Claassen*, 2016-0610, p. 11, 207 So.3d at n. 3 (citing *Castiglione v. Galpin*, 325 So.2d 725, 726 (La. App. 4th Cir. 1976)).

reflects that Defendant told Plaintiff, "I'm going to beat the (sic) out of you[.]" In reviewing the entirety of the evidence, we conclude the district court did not abuse its discretion in issuing a protection order. This assignment of error is without merit.

## CONCLUSION

The district court did not abuse its discretion in authenticating and admitting the text messages and, in turn, issuing an order of protection in favor of Plaintiff and against Defendant. The district court's judgment is affirmed.

**AFFIRMED**