| | | |
|---|---|---|
| **TERENCE ST. GERMAIN** | * | **NO. 2020-CA-0146** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **LESLEY SIMMONS ST. GERMAIN** | * | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2005-12590  C\W 2008-10763, 2009-09621, DIVISION "E"
Honorable Omar Mason, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*

(Court composed of Judge Regina Bartholomew-Woods, Judge Paula A. Brown, Judge Dale N. Atkins)


Michael A. Rosenblatt
ATTORNEY AT LAW
211 Derbigny Street
Gretna, LA 70053


COUNSEL FOR PLAINTIFF/APPELLEE


Edith Henderson Morris
Suzanne Ecuyer Bayle
Bernadette Rocco Lee
Sheila H. Willis
MORRIS LEE & BAYLE, L.L.C.
1515 Poydras Street, Suite 1420
New Orleans, LA 70112

COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED IN PART; AFFIRMED IN PART**
**March 17, 2021**

PAB
RBW
DNA

This case involves a judicial partition by licitation of co-owned property. Defendant/Appellant, Lesley Simmons St. Germain, and Plaintiff/Appellee, Terence St. Germain, were married. Prior to their marriage, they purchased a home together located at 1015 Dublin Street in New Orleans, Louisiana (the "Home"). The St. Germains divorced, and following the divorce, Mr. St. Germain filed, in the district court, a petition to partition by licitation the co-owned Home, which was granted by the district court on June 28, 2019. As part of the judgment, Mr. St. Germain was awarded damages in the amount of $91,787.15 for being excluded from the Home, after his demand for use of the Home was refused. From

1

this portion of the judgment, Ms. St. Germain seeks appellate review. In addition, Mr. St. Germain filed an answer, appealing only that portion of the district court's judgment which ordered him to reimburse Ms. St. Germain one-half of the mortgage payments, in the amount of $49,378.71, for the Home.[1] For the reasons set forth below, we reverse the portion of district court's June 28, 2019 judgment which awarded damages to Mr. St. Germain, and affirm that portion of the judgment which awarded Ms. St. Germain reimbursement for one-half of the mortgage payments for the Home.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

*Ancillary matters pertaining to the divorce*

The St. Germains purchased the Home before they were married and lived in the Home during their marriage. On November 16, 2005, Mr. St. Germain filed a petition for divorce, which became final on August 16, 2006. The community property regime terminated on November 16, 2005.

On November 28, 2005, while the petition for divorce was pending, Ms. St. Germain filed rules for ancillary matters of the divorce, including a request for use and occupancy of the Home. On December 30, 2005, a hearing was held at which the parties entered into a consent agreement. The parties noted it was an interim agreement, except for the portion of the agreement that provided: (1) Ms. St. Germain have exclusive use and occupancy of the Home beginning February 1, 2006; (2) Ms. St. Germain pay the mortgage payments; and (3) Mr. St. Germain reserved "his right to claim rental reimbursement without the need to file a rule for

---

[1] In his answer to the appeal, Mr. St. Germain also requested this Court award him costs and attorney's fees for having to oppose a frivolous appeal. Counsel did not brief the issue on appeal; thus, we find this issue abandoned. *See* Uniform Rules—Courts of Appeal, Rule 2 - 12.4(B)(4).

rental reimbursement. . . ." A transcription of the hearing, at which the parties set forth the consent agreement, was signed as the judgment on March 30, 2006.

On December 7, 2007, Mr. St. Germain filed a motion pursuant to La R.S. 9:374(A) and (C) in the district court. Louisiana Revised Statute 9:374(A) and (C), effective July 5, 2004 to August 14, 2008, provided, in pertinent part:

> A. When the family residence is the separate property of either spouse, after the filing of a petition for divorce or in conjunction therewith, the spouse who has physical custody or has been awarded temporary custody of the minor children of the marriage may petition for, and a court may award to that spouse, after a contradictory hearing, the use and occupancy of the family residence pending the partition of the community property or one hundred eighty days after termination of the marriage, whichever occurs first. In these cases, the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, and shall award the use and occupancy of the family residence to the spouse in accordance with the best interest of the family. The court shall consider the granting of the occupancy of the family home in awarding spousal support.
>
> * * *
> C. A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, except as hereafter provided. If the court awards use and occupancy to a spouse, it shall at that time determine whether or not to award rental for the use and occupancy and, if so, the amount of the rent. The parties may agree to defer the rental issue for decision in the partition proceedings. If the parties agreed at the time of the award of use and occupancy to defer the rental issue, the court may make an award of rental retroactive to the date of the award of use and occupancy.

In the motion, Mr. St. Germain requested: (1) exclusive use of the Home; (2) a judgment dissolving Ms. St. Germain's exclusive use of the Home or alternatively, setting rental value of Ms. St. Germain's use of the Home; (3) his claim to be heard for rental reimbursement during the period of time Ms. St. Germain had exclusive use of the Home; and (4) an order requiring the sale of the Home.

3

In response, Ms. St. Germain, on January 15, 2008, filed exceptions of *res judicata* as to the exclusive use of the Home, no cause of action as to the request for rental reimbursement, unauthorized use of summary proceedings as to the request to partition the Home, and an opposition memorandum. Ms. St. Germain argued that the rules of co-ownership, instead of those governing the matrimonial regime, applied.

A hearing on Mr. St. Germain's motion and Ms. St. Germain's exceptions was held on February 13, 2008. After taking the matter under advisement, on April 8, 2008, the district court sustained Ms. St. Germain's exceptions of *res judicata* and no cause of action and dismissed Mr. St. Germain's motion. In its written reasons for judgment, the district court wrote, in pertinent part:

> This case raises an interesting issue as the parties apparently purchased the property prior to their marriage and thus the family home located at 1015 Dublin Street, is the separate property of both spouses. As such, La. R.S. 9:374(A) applies and the use and occupancy of the former family home terminated one hundred and eighty (180) days after the termination of the marriage. Accordingly, Lesley St. Germain's Exception of *Res Judicata* is granted and Terrence [sic] St. Germain's Motion for Exclusive Use and Occupancy of the Family Home is dismissed. Issues pertaining to the property located at 1015 Dublin Street should be brought by ordinary proceedings applicable to co-owners.

From this judgment, Mr. St. Germain sought review by this Court, which was denied. *St. Germain v. St. Germain*, 08-608 (La. App. 4 Cir. 9/11/08)(unpubl.).

*Matters pertaining to co-ownership of the Home*

In accordance with La. R.S. 9:374(A), the one-hundred and eighty-day period for Ms. St. Germain's exclusive use of the Home ended on February 12, 2007. In May 2008, Mr. St. Germain requested, via email, a key to the Home. Ms. St. Germain denied his request.

4

In October 2008, Mr. St. Germain filed a petition to partition the co-owned property pursuant to La. C.C.P. art. 4601, *et seq.* A sworn detailed descriptive list of assets and liabilities ("descriptive list") attached to the petition requested rental reimbursement. No action was taken on this petition.

In October 2016, Mr. St. Germain filed a second petition to partition by licitation the co-owned Home.[2] In the prayer for relief, Mr. St. Germain prayed:

---

[2] The second petition for partition by licitation provided in pertinent part:

> Petitioner and Defendant herein are the co-owners of an immovable property located at 1015 Dublin Street, New Orleans, LA 70118, along with all appliances present thereupon (hereinafter referred to as "the property").
>
> 3.
> Petitioner seeks to end his financial relationship with the Defendant, and therefore seeks to end the parties' co-ownership of the property.
>
> 4.
> The property cannot be partitioned in kind inasmuch as it consists of immovable property, owned in an undivided interest, and therefore, it is necessary that the property be sold in order to affect the complete division of the interests among the owners.
>
> 5.
> This Court is the proper venue for the proceeding, pursuant to Louisiana Code of Civil Procedure Article 80(2) because the property sought to be partitioned is situated in Orleans Parish.
>
> 6.
> Because petitioner and defendant cannot agree upon a non-judicial partition, petitioner wishes to proceed under Louisiana Code of Civil Procedure Article 4601, *et seq.,* through a partition by licitation proceeding.
>
> 7.
> In the alternative, petitioner requests that this Honorable Court exercise its discretion pursuant to Louisiana Code of Civil Procedure Article 4605, and "direct the manner and conditions of effecting the partition, so that it will be most advantageous and convenient to the parties," by ordering the Defendant to allow an appraisal of the immovable property subject to partition as well as to execute a listing agreement so that the parties may move forward with a private sale.
>
> 8.
> In the event this Court finds that a judicial sale is necessary, petitioner avers that the parties do not require this Court to make an inventory of the property, as the property consists solely of the single aforementioned immovable property located at 1015 Dublin Street, New Orleans, LA 70118

> [T]here be a judgment entered in his favor and against Lesley Simmons St. Germain awarding costs associated with the partition proceeding to petitioner from the sale proceeds; and ordering that the immovable property subject to this pleading be appraised and subsequently listed for private sale; or, in the alternative, ordering the sale and partition by licitation of the property in accordance with Louisiana Code of Civil Procedure Article 4607, and awarding the Petitioner all general legal and equitable relief to which he may be entitled.

Mr. St. Germain also filed a separate petition to partition the community property.

In November 2016, Ms. St. Germain filed an answer to the petitions and a reconventional demand, which included a request for reimbursement for one-half of the mortgage payments made on the Home. In January 2019, Ms. St. Germain filed a descriptive list and requested reimbursement for the mortgage payments from May 6, 2006 through February 2019.

In December 2016, Mr. St. Germain filed an exception of no right of action. Specifically, Mr. St. Germain contested Ms. St. Germain's claim for reimbursement for one-half of the mortgage payments on the grounds that Ms. St. Germain's father made these payments. Mr. St. Germain also filed an answer to Ms. St. Germain's reconventional demand and asserted the following affirmative defenses:

> The Petitioner-in-reconvention, Lesley St. Germain, was awarded exclusive use of the former family home pursuant to La. R.S. 9:374.

> 11.
> The Defendant-in-reconvention, Ter[ence] St. Germain, requested he be awarded rental for Petitioner-in-reconvention's use and occupancy and said issue was deferred for decision in the partition proceedings. Accordingly, any award of reimbursement for one-half of the mortgage payments made by Lesley St. Germain on the property located at 1015 Dublin Street, New Orleans, LA 70118 are subject to an offset for the fair market rental value of the property.

> 12.

Article 806 of the Civil Code provides, "[i]f the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment." Any reimbursement awarded the Petitioner-in-reconvention should be reduced due to her maintaining exclusive use of the premises since the parties separated.

In June 2018 and January 2019, Mr. St. Germain filed detailed descriptive lists, wherein he claimed rental reimbursement for Ms. St. Germain's exclusive use of the property. Approximately two weeks before trial, on February 12, 2019, Mr. St. Germain filed an amended descriptive list, and under "Reimbursement Claims" listed "1/2 of fair market rental value of 1015 Dublin Street for the period from May 1, 2008 through February 28, 2019." Also, on February 12, 2019, Mr. St. Germain filed a pre-trial memorandum for the trial on the petition for partition by licitation and partition of the community property. In the pre-trial memorandum under the caption "Petition for Licitation," Mr. St. Germain argued that, as a co-owner, he was entitled to damages for being excluded from the Home by Ms. St. Germain, after demand for use was made and refused. Mr. St. Germain asserted his damages should be ascertained from "one-half of the fair market rental value of the property during the period in which he was denied possession of the [co-owned] property."

On February 26 and 27, 2019, a trial was held on the petition for partition by licitation, the petition for partition of the community property, Ms. St. Germain's reconventional demand, and Mr. St. Germain's exception of no right of action. At trial, Ms. St. Germain objected to the testimony and evidence regarding Mr. St. Germain's claim for damages for being excluded from the Home on the grounds the claim was not properly pled. The district court overruled the objection. After hearing the testimony and evidence, the district court took the matter under

7

advisement and allowed the parties to submit post-trial memoranda. The district court issued a judgment on June 28, 2019, along with written reasons.[3] In particular, the district court overruled Mr. St. Germain's exception of no right of action and granted Ms. St. Germain's request for reimbursement by Mr. St. Germain of one-half of the mortgage payments for the Home. In addition, the district court awarded Mr. St. Germain damages for Ms. St. Germain's refusal to grant Mr. St. Germain use of the Home, after a demand for use was made and refused.[4]

This suspensive appeal followed.

## DISCUSSION

Ms. St. Germain appeals only the portion of the district court's June 28, 2019 judgment awarding Mr. St. Germain damages. She essentially asserts the following errors: (1) the district court erred in overruling her objection and allowing Mr. St. Germain to request "damages" when the issue was not properly

---

[3] It is a "'well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.'" *Wooley v. Lucksinger,* 09-0571, 09-0584, 09-0585, 09-0586, p. 77 (La. 4/1/11), 61 So.3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 07-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671). However, a court of appeal may review the trial court's reasons for judgment to "gain insight" into the trial court's judgment. *Id.*, s*ee also Bruno v. CDC Auto Transp., Inc.,* 19-1065, p. 9 (La. App. 4 Cir. 6/3/20), 302 So.3d 8, 13 n.11, *writ denied,* 20-00836 (La. 10/14/20), 302 So.3d 1118.

[4] The district court, however, denied Mr. St. Germain's request for one-half of rental reimbursement for the time-period between February 1, 2006 to February 12, 2007, when Ms. St. Germain had exclusive use and occupancy of the family Home pursuant to the consent agreement. The district court found that Mr. St. Germain reserved his right to rental reimbursement under La. R.S. 9:374, but he "relinquished his claim for rental reimbursement in his Reply memorandum and at the trial of the merits." In addition, the district court found that the amounts incurred by Ms. St. Germain for the necessary expenses, ordinary maintenance, and repairs on the Home, pursuant to Civil Code Article 806, were subject to reduction based on Ms. St. Germain's enjoyment of the property. The district court calculated the value of Ms. St. Germain's enjoyment of the property based on a calculation of the fair market rental value from February 12, 2006 through the date of trial. The district court found that Ms. St Germain's claim for reimbursement for ordinary maintenance and repairs on the property was completely offset by her thirteen-year enjoyment of the property. These portions of the district court's judgment were not appealed by either party.

8

pled; and (2) alternatively, the district court erred in awarding Mr. St. Germain's request for damages in the form of rental reimbursement because the issue was precluded by *res judicata* and/or there was no authority under the law providing for such an award.

Mr. St. Germain filed an answer to the appeal. He alleged that the district court erred in denying his exception of no right of action, regarding Ms. St. Germain's claim for reimbursement of mortgage payments for the co-owned Home, and by granting Ms. St. Germain's claim for one-half of the mortgage payments for the Home.

**Standard of review**

In *Hankton v. State*, 19-0557, pp. 4-5 (La. App. 4 Cir. 3/4/20), 294 So.3d 25, 30-31, *writ granted*, 20-00462 (La. 7/2/20), 297 So.3d 765, and *aff'd as amended*, 20-00462, 2020 WL 7299952 *1 (La. 12/1/20), this Court explained, in pertinent part:

> "Appellate courts review findings of fact made by the trial court judge using the manifestly erroneous or clearly wrong standard of review." *Keller v. Monteleon Hotel*, 2009-1327, p. 2 (La. App. 4 Cir. 6/23/10), 43 So.3d 1041, 1042 (citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)).
>
> * * *
>
> "While the manifest error standard applies to our review of facts found below, we are required to examine the record as well for legal error." *City of New Orleans v. Badine Land Ltd.*, 2007-1066, p. 3 (La. App. 4 Cir. 5/21/08), 985 So.2d 832, 834. "[L]egal errors are reviewed under the *de novo* standard of review." *1026 Conti Condominiums, LLC v. 1025 Bienville, LLC*, 2015-0301, p. 5 (La. App. 4 Cir. 12/23/2015), 183 So.3d 724, 727. "A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial." *Id.* "Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." *Evans v. Lungrin,* 1997-0541, p. 7 (La. 2/6/98), 708 So.2d 731, 735. "Where an error of law taints the record, we are not bound to affirm the judgment of the lower court." *City of New Orleans*, 2007-1066, p. 3, 985 So.2d at 834-35.

9

"The standard of review of a trial court's ruling on an exception of no right of action is *de novo*." *N. Clark, L.L.C. v. Chisesi*, 16-0599, p. 3 (La. App. 4 Cir. 12/7/16), 206 So.3d 1013, 1015 (citing *St. Pierre v. Northrop Grumman Shipbuilding, Inc.*, 12-0545, p. 7 (La. App. 4 Cir. 10/24/12), 102 So.3d 1003, 1009, noting that "appellate review of those exceptions involves determining whether the trial court was legally correct in sustaining such exceptions.").

## MS. ST. GERMAIN'S APPEAL

### Failure to plead damages

Ms. St. Germain asserts that the district court erred by failing to sustain her objection, and awarding Mr. St. Germain damages for being excluded from use of the Home after his demand, when the damages were not properly pled.

In response, Mr. St. Germain admits that his request for damages for being excluded from the Home was not pled in the petition for partition by licitation or in his reconventional demand, but he argues that this damage claim was sufficiently pled in his pre-trial memorandum, reply, and descriptive list to give Ms. St. Germain notice of his claim.

As this claim involves legal issues—whether the district court erred in overruling Ms. St. Germain's objection to the admissibility of evidence to support Mr. St. Germain's claim for damages and whether the damages were properly pled—the *de novo* standard of review is applicable. *Hankton*, 19-0557, p. 5, 294 So.3d at 30.

*The objection*

At trial, on direct-examination, Mr. St. Germain testified that in May 2008, he requested, via an e-mail, "keys to the home so I could enjoy use of it, and it was denied." Counsel for Ms. St. Germain objected, stating:

> Your Honor, objection to this line of questioning. Mr. St. Germain made an affirmative defense in this court that he was claiming that Ms. St. Germain had use and occupancy and that he had reserved his right to rental, and he's never amended that affirmative defense. And I don't believe that he can move and change what he's arguing now and that is what we prepared for. . . . I don't think you can expand the petition or expand your answer or request stuff that you've never requested in a hearing.

Counsel for Mr. St. Germain responded:

> I filed a pretrial memorandum which addressed the issue of damages, and that's for the denial of the use of property. To sit there and say that doesn't amount to an amendment of the petition is inaccurate. She was placed on notice that I was arguing the damages. She's received the information again in a reply memo. . . .

He further explained that damages are ascertained from the fair market rental value of the Home.

> Counsel for Ms. St. Germain replied:

> [A] memorandum is not a pleading. And you're well aware that [Counsel for Mr. St. Germain] filed his memorandum after the sworn list had already been filed. And you cannot expand pleadings based on memorandum of law.[5]

---

[5] Counsel for Ms. St. Germain explained:

> He can't bring things up at this trial that he's never pled. We're all bound by the rules. His rules are he filed this stuff. I'm preparing for trial based on what he filed. All of a sudden he files a memorandum one day before the memorandums [sic] -- he files a new list. He doesn't put damages. He puts rental on there. He's still claiming rental. Based on my understanding he's still claiming rental. Then all of a sudden this new memorandum says now I want damages because I understand under the law I don't have rental. I can't get rental, and I have this new claim for damages.

She further responded that the proper way to seek damages for allegedly being excluded from use of the Home was for Mr. St. Germain to "amend his affirmative defenses or file a petition asking for damages."

The district court overruled Ms. St. Germain's objection stating:[6]

> The Court is going to recognize the affirmative defense for rental fees as the affirmative defense pled. Damages is a separate category. It's not an affirmative defense. In light of that, the Court's going to overrule the objection with respect to testimony regarding damages.

*District court's judgment*

Following the trial, the district court, in its written reasons for judgment, discussed the award of damages to Mr. St. Germain and reasoned as follows:

> The record reflects that the Court awarded Ms. St. Germain exclusive use and occupancy of the 1015 Dublin Street property. Ms. St. Germain's exclusive use and occupancy commenced on February 1, 2006. Based on the version of La. R.S. 9:374(A) in effect at the time, Ms. St. Germain's exclusive use and occupancy would have expired 180 days after the judgment of divorce. The Judgment of Divorce was rendered on August 31, 2006 and 180 days thereafter would have been February 12, 2007. During the tenure of Ms. St. Germain's exclusive use of the co-owned property, Ms. St. Germain changed the locks of the property which prevented Mr. St. Germain from having access to the home. In December of 2007, Mr. St. Germain filed a Petition for Exclusive Use and Occupancy. In April of 2008, Judge Tiffany Chase denied his claim by sustaining an exception of *res judicata*. In May of 2008, Terence St. Germain sent an email requesting keys to the co-owned property. . . . Ms. St. Germain did not provide him with a key to the home and has continually denied Mr. St. Germain access to the home since that time. As such, the Court finds that Mr. St. Germain was denied use of the co-owned property and is entitled to damages.
>
> Louisiana jurisprudence has confirmed that the monthly rental value of a home may be used as a means of calculating enjoyment of immovable property. See *Cahill* v. *Kerins,* 34,522 (La. App. 2 Cir.

---

[6] When questioning on this matter arose again during trial, counsel for Ms. St. Germain reurged her objection, and the district court overruled it.

4/4/01), 784 So.2d 685, 691. Accordingly, Mr. St. Germain's damages are one-half of the fair market rental value of the property during the period in which he was denied possession of the property. Expert appraiser Jimmie Thomas valued rent of the home at $1,380 in December of 2006. The Court, based on its calculations of the value of the home, finds that the rental value in December of 2018 was $1,433.33. The Court's determination considered the sale prices and rents of the comparable properties submitted by both parties. The Court's valuation indicates that the property's rental value increased $53.33 over a period of twelve years. This equals an average annual increase of $4.44. Based on the evidence presented into the record, damages began accruing in May of 2008 and continued until the date of trial. The damages are best measured by one-half of the monthly rental value of the property.[7]

The district court concluded that the total fair market rental value of the Home was $183,574.30 and that Mr. St. Germain was entitled to damages in the amount of one-half the rental value, $91,787.15.

To determine if the damages awarded were properly pled, we must determine the type of damages.

*Type of damages*

Compensatory damages are divided into two broad categories—general damages and special damages. *Jensen v. Matute*, 19-0706, p. 6 (La. App. 4 Cir. 1/29/20), 289 So.3d 1136, 1142 (citation omitted). "General damages are defined

---

[7] The district court set forth its calculation of the rent as follows:

    a.  2008:  8 months at $1,388.88 per month = $11,111.04
    b.  2009: 12 months at $1,393.32 per month = $16,719.84
    c.  2010: 12 months at $1,397.76 per month = $16,773.12
    d.  2011: 12 months at $1,402.20 per month = $16,826.40
    e.  2012: 12 months at $1,406.64 per month = $16,879.68
    f.  2013: 12 months at $1,411.08 per month = $16,932.96
    g.  2014: 12 months at $1,415.52 per month = $16,986.24
    h.  2015: 12 months at $1,419.96 per month = $17,039.52
    i.  2016: 12 months at $1,424.40 per month = $17,092.80
    j.  2017: 12 months at $1,428.84 per month = $17,146.08
    k.  2018: 12 months at $1,433.33 per month = $17,199.96
    l.  2019:  2 months at $1,433.33 per month = $2,866.66

    Total = $183,574.30.
One-half of $183,574.30 is $91,787.15.

13

as 'those which may not be fixed with pecuniary exactitude.'" *Id*. (quoting *Duncan v. Kansas City Southern Railway Co.*, 00-0066, p. 13 (La. 10/30/00), 773 So.2d 670, 682). General damages do not have to be specifically pled. Louisiana Code of Civil Procedure Article 862 provides that "[e]xcept as provided in Article 1703 [a default judgment], a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief." In *Eckstein v. Becnel*, 17-0868, p. 15 (La. App. 4 Cir. 6/27/18), 250 So.3d 1046, 1056-57 (citation omitted), this Court explained that Article 862 gives the district court discretion to grant relief not requested with great specificity or extensively pled. Whereas, special damages "shall be specially alleged," and have "a 'ready market value' such that the amount theoretically may be determined with relative certainty." La. C.C.P. art. 861; *Kaiser v. Hardin,* 06-2092, p. 11 (La. 4/11/07), 953 So.2d 802, 810.

To ascertain if the damages sought and awarded to Mr. St. Germain were general or special damages, we look to the law on co-ownership. "The use and management of the thing held in indivision is determined by agreement of all the co-owners." La. C.C. art. 801. "Except as otherwise provided in Article 801, a co-owner is entitled to use the thing held in indivision according to its destination, but he cannot prevent another co-owner from making such use of it." La. C.C. art. 802. In *Juneau v. Laborde*, 82 So.2d 693, 696 (1955) (footnotes omitted), the Supreme Court addressed the rights of co-owners:[8]

---

[8] In *Juneau*, 82 So.2d at 696 n.1, the court noted that the plaintiffs had never sought occupancy of any part of the premises nor had been denied the right of occupancy.

14

[T]he co-owner who takes possession of the common property does not have to account to his coproprietor, because the right of occupancy is vested in him by virtue of his ownership. Article 494, Civil Code. This right of co-owners to possession of the property being equal and coextensive, neither becomes indebted to the other for his personal occupancy and enjoyment, save, probably, that a co-owner, who has been deprived of the right of possession by reason of his co-owner's exclusive occupancy, may claim damages from the date upon which he has demanded occupancy and has been refused by the possessor. But, even in these instances, the co-owner in possession cannot be enjoined from occupying the property or cultivating it. The remedy of the co-owner out of possession is, as stated in *Moreira v. Schwan*, 113 La. 643, 37 So. 542, 543, '* * * by suit for a partition and settlement of accounts, or for a division of profits, if any.'

*See also Succession of Pellette*, 19-1355, pp. 5-6 (La. App. 1 Cir. 6/12/20), 305 So.3d 893, 898, *writ denied*, 20-00881 (La. 10/14/20), 302 So.3d 1117;[9] *Von Drake v. Rogers*, 43,546, p. 2 (La. App. 2 Cir. 10/8/08), 996 So.2d 608, 610 (citation omitted)[10]; *Cahill v. Kerins*, 34,522, p. 3 (La. App. 2 Cir. 4/4/01), 784 So.2d 685, 689 n.2.[11] Louisiana courts look at the fair market rental value of the co-owned property to ascertain damages in a partition by licitation suit, when a co-

---

[9] In *Succession of Pellette*, 19-1355, p. 7, 305 So.3d at 900, the appellate court held that the naked owners failed to prove that, following the termination of the usufruct, there was a demand for occupancy made by the naked owners that would entitle them to rental reimbursement.

[10] In *Von Drake*, 43,546, p. 6, 996 So.2d at 612, the appellate court found the co-owner was entitled to his share of the fair market rental value of the co-owned home when he was excluded from use after a demand for use. The appellate court concluded that the demand for use was first made in the filing of the petition seeking fair rental value for being excluded from use.

[11] In *Cahill v. Kerins*, 34,522, p. 3 (La. App. 2 Cir. 4/4/01), 784 So.2d 685, 688 n.2, wherein the issue of rental reimbursement for exclusion from the co-owned property was raised at trial but not on appeal, the appellate court noted in dicta that:

> Ms. Cahill neither appealed nor answered the appeal challenging the trial court's denial of reimbursement for monthly rental value of the home. We do note that Ms. Cahill may have been entitled to reimbursement for the monthly rental value had she made formal demand for occupancy and been refused. See *McCarroll v. McCarroll*, 96-2700 (La.10/21/97), 701 So.2d 1280; *Juneau v. Laborde*, 228 La. 410, 82 So.2d 693 (La.1955). The trial court made the factual finding that such demand was not made, therefore, Ms. Cahill was not entitled to reimbursement for monthly rental value.

owner seeks damages, after a demand for occupancy has been made and refused. *See Succession of Pellette*, 19-1355, p. 5, 305 So.3d at 898 (citation omitted) ("A co-owner in exclusive possession may be liable for rent, but only beginning on the date another co-owner has demanded occupancy and has been refused"); *Von Drake*, 43,546, p. 2, 996 So.2d at 610 (citation omitted); *Cahill*, 34,522, p. 3 (La. App. 2 Cir. 4/4/01), 784 So.2d at 689 n.2. In *Jensen*, 19-0706, pp. 6-7, 289 So.3d 1136, 1142 (quoting *FIE, LLC v. New Jax Condo Ass'n, Inc.*, 16-0843, 17-0423, p. 14 (La. App. 4 Cir. 2/21/18), 241 So.3d 372, 387), this Court held that "'loss of use of property falls within the category of special damages because it can be measured fairly and to a degree of relative certainty by the rental value of substitute property.'" As in *Jensen*, we conclude that the damages sought by Mr. St. Germain for his loss of use of the co-owned property, after he demanded use and was refused, were special damages.

*Pleading of special damages*

"'[A] trial court may not award special damages which have not been specifically plead.'" *St. Pierre Ass'n v. Smith*, 17-0228, p. 6 (La. App. 4 Cir. 12/6/17), 234 So.3d 170, 175 (quoting *Watts v. Scottsdale Ins. Co.*, 45,397, pp. 7-8 (La. App. 2 Cir. 6/30/10), 43 So.3d 266, 271). Louisiana Code of Civil Procedure Article 852 provides:

> The pleadings allowed in civil actions, whether in a principal or incidental action, shall be in writing and shall consist of petitions, exceptions, written motions, and answers. No replicatory pleadings shall be used and all new matter alleged in exceptions, contradictory motions, and answers, whether in a principal or incidental action, shall be considered denied or avoided.

Notwithstanding, La. C.C.P. art. 1154 provides an exception if a claim is not properly pled:

16

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits.

As previously noted, Mr. St. Germain admits he did not plead damages in his petition for partition by licitation or in his reconventional demand, but asserts that Ms. St. Germain was on notice of his damage claim, because his claim was included in his pre-trial memorandum and in his descriptive list. In *Vallo v. Gayle Oil Co.*, 94-1238, p. 8 (La. 11/30/94), 646 So.2d 859, 865, the Supreme Court, citing La. C.C.P. art. 852, explained that the "pleadings allowed in civil actions are petitions, exceptions, written motions and answers" and noted that memorandum, opposition or briefs do not constitute pleadings. In the case *sub judice*, we conclude that Mr. St. Germain failed to specifically plead his special damage claim as required by La. C.C.P. art. 861. In addition, when Ms. St. Germain objected to the testimony regarding Mr. St. Germain's damages claim for failure of Mr. St. Germain to properly plead the damages, Mr. St. Germain did not request leave from the district court to amend his petition, pursuant to La. C.C.P. art. 1154, to include this damage claim. Consequently, after our *de novo* review, we determine that the district court erred in overruling Ms. St. Germain's objection to the admissibility of testimony regarding Mr. St. Germain's damage claim and reverse that portion of the district court's judgment which awarded Mr. St. Germain damages in the amount of $91,787.15.

17

Having determined that the demand for special damages was not specifically pled as required by La. C.C.P. art. 861 and reversing that portion of the judgment, the remaining errors asserted by Ms. Germain, which all pertain to the damages award, are moot.

**Mr. St. Germain's Answer to the Appeal**

In his answer to the appeal, Mr. St. Germain asserted that the district court erred in overruling his exception of no right of action and by granting Ms. St. Germain's claim for one-half of the mortgage payments for the Home from May 6, 2006 through February 2019, as to the portion paid by Ms. St. Germain's father.[12]

Ms. St. Germain responded that it was a debt for the co-owned property, and she personally obligated herself to a family member to make these payments, including Mr. St. Germain's virile share.

In the reconventional demand, Ms. St. Germain claimed reimbursement for fourteen mortgage payments–seven payments paid by Ms. St. Germain and seven payments paid by Ms. St. Germain's father. To challenge the claim for reimbursement, Mr. St. Germain filed an exception of no right of action. He asserted that Ms. St. Germain did not have a right to seek reimbursement for his portion of the mortgage payments made by her father. The exception was deferred to the trial on the merits.

At trial, Ms. St. Germain's father testified that he made these payments directly to the bank, but he expected to be repaid. Ms. St. Germain testified that she had not paid her father back for these payments. After hearing the testimony of the witnesses, the district court overruled the exception and held Mr. St.

---

[12] As these claims are interrelated, we will address them together.

Germain was responsible for his one-half share of all the mortgage payments, subject to the reduction for the property taxes and insurance included in the mortgage payments, made toward the Home. In its reasons, the district court wrote, in pertinent part:

> The record reflects that the parties purchased the home four months prior to their marriage. As such, they are co-owners of the property located at 1015 Dublin Street. The mortgage on the property is therefore a joint and solidary obligation of the parties. The record reflects that Mr. St. Germain filed for divorce on November 15, 2005 and as of the filing of the divorce, Mr. St. Germain did not make a single payment on the mortgage for the 1015 Dublin Street property, a fact which was not denied or disputed by Mr. St. Germain at trial.
>
> In order to make payments on the mortgage, Ms. St. Germain took out personal loans from her father. Dr. Simmons. Dr. Simmons wrote checks directly to the bank to satisfy the monthly mortgage payments. Dr. Simmons testified to the fact that he considered these payments loans to both of the parties. However, the Court finds that these loans only obligate Ms. St. Germain. Ms. St. Germain's act of taking out loans would not have created an obligation for Mr. St. Germain to pay a portion of the loan to her father. In effect, Ms. St. Germain took out personal loans from her father in order to satisfy the joint and solidary obligation that existed between the parties. As such, the Court finds that Ms. St. Germain has rendered performance of the joint and solidary obligation existing between the parties and she is thus entitled to reimbursement for payments made on the mortgage. The Court does not find that Mr. St. Germain can be absolved from his obligation to reimburse Ms. St. Germain simply because she received family assistance to render performance of the obligation. The record reflects that Ms. St. Germain took out personal loans from her father in the amount of $144,118.56 in order to render performance on the mortgage. As such, she would be entitled to one-half of this amount.

Mr. St. Germain acknowledged that the mortgage against the immovable property at issue was a joint and solidary obligation between him and Ms. St. Germain. In addition, he acknowledged that Ms. St. Germain made seven payments towards the mortgage, and she was entitled to reimbursement from him for his portion of the debt. Mr. St. Germain, however, disputed owing any reimbursement for the seven payments made toward the mortgage paid by Ms. St.

19

Germain's father, who was not a party to the mortgage. Citing La. C.C. art. 1804, Mr. St. Germain contended that Ms. St. Germain has no right of action against him for reimbursement of mortgage payments she did not pay.

As this involves the district court's overruling of an exception of no right action, the *de novo* standard of review applies. *N. Clark, L.L.C.*, 16-0599, p. 3, 206 So.3d at 1015.

> Louisiana Code of Civil Article 1804 provides, in pertinent part:
>
> Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor.
>
> A solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.

In *Hill v. Hill*, 08-197 (La. App. 5 Cir. 5/27/08), 984 So.2d 229, 234-35, which is cited by both the parties in support, following termination of the Hills' marriage, Mr. Hill paid the joint debts and sought reimbursement from Ms. Hill of her virile share. The appellate court held that Mr. Hill had "a reimbursement claim for [Ms. Hill's] virile share of the payments he made on the joint debts, to the extent he can prove he made the payments with his separate funds." *Id.*, 08-197, p. 8, 984 So.2d at 234. The appellate court also agreed with the trial court that Ms. Hill could not be held liable on a debt contracted by Mr. Hill with a third party, after termination of the marriage, to pay debts jointly owned by him and Ms. Hill. *Id.*, 08-197, p. 9, 984 So.2d at 235.

In the case *sub judice*, it is undisputed that Ms. St. Germain was responsible for making the mortgage payments, the payments were made—some with funds borrowed by Ms. St. Germain—and the payments were for the benefit of paying

20

down the co-owned debt on the Home.  Thus, we find that the district court did not err in ordering Mr. St. Germain to pay one-half of the mortgage payments.

This claim lacks merit.

## CONCLUSION

Based on the reasons set forth above, the portion of the district court's judgment, awarding Mr. St. Germain damages in the amount of $91,787.15, is reversed, and the district court's judgment, awarding Ms. St. Germain reimbursement for mortgage payments in the amount of $49,378.71 is affirmed.

**REVERSED IN PART; AFFIRMED IN PART**